ELIZABETH A. IDE *vs.* STEPHEN PIERCE, executor.

Bristol. Oct. 25, 1882. — Feb. 5, 1883. C. ALLEN, COLBURN & HOLMES, JJ., absent.

In an action by E. against the executor of the will of M., for money had and received, there was evidence tending to show that a deposit was made by a third person in a savings bank, and a deposit-book was taken in the name of " E. or M., or the survivor of them ; " that M. drew the money from the bank during the life of E. ; and that the amount so drawn out was put in the bank by the depositor as a perfected gift to the uses declared by the terms of the deposit-book, and that M. appropriated the money to her own use. E. admitted that she put no money of her own in the bank, and that she never had any exclusive possession or control of the deposit-book, and had no knowledge of the existence of such deposit until about the time it was withdrawn by M., which was after the death of the depositor. The evidence showed that M. had possession of the deposit-book when she withdrew the money. The judge instructed the jury, " that if they found the money was deposited by some third person in the name and to the use of ' E. or M. or the survivor of them,' and that such gift was completed by a transfer and delivery, and by a surrender of all control on his part over the fund, then the legal effect of such deposit would be the same as if in the name of ' E. and M. and the survivor of them ; ' and that during their joint lives they would be entitled each to one half the dividends, and upon the decease of either the fund would go to the survivor." *Held,* that the evidence did not establish a trust; that it was for the jury to determine what were the terms of the gift ; and that the instruction given was misleading.

If the books of a corporation are admissible in evidence, and are not within the jurisdiction of the court, copies of them properly verified are admissible.

The treasurer of a foreign savings bank, having answered, to an interrogatory in a deposition, that the books of the bank, which were in his custody, showed that the bank had had business with a certain person, was asked to give an exact transcript of the entries in the books relating to the business. His answer was, " See statement annexed." What purported to be a transcript of the books relating to the business was annexed to the deposition. *Held,* that it sufficiently appeared that the transcript had been compared with the originals, and was a true copy.

CONTRACT, against the executor of the will of Mary Ide, for money had and received. At the trial in the Superior Court, before *Staples,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*W. H. Fox,* ( *W. E. Fuller* with him,) for the defendant.

*J. Brown,* for the plaintiff.

FIELD, J. It appears that evidence was admitted tending to prove that a deposit was made. in the Providence Institution for Savings by Nathan Ide, or some other person, and that a

deposit-book was taken in the name of " Elizabeth A. or Mary Ide, or the survivor of them;" that Mary drew the money from the bank during the life of Elizabeth; and "that the amount so drawn out was put in the bank by the depositor as a perfected gift to the uses declared in and by the terms of the deposit-book already referred to, and that Mary appropriated this money to her own use." The plaintiff admitted "that she put no money of her own in the bank, and that she never had any exclusive possession or control of the deposit-book, and had no knowledge of the existence of such deposit till about the time it was withdrawn" by Mary, which was after the death of Nathan Ide. The court instructed the jury, "that if they found the money was deposited by some third person in the name and to the use of ' Elizabeth A. or Mary Ide, or the survivor of them,' and that such gift was completed by a transfer and delivery, and by a surrender of all control on his part over the fund, then the legal effect of such deposit would be the same as if in the name of ' Elizabeth A. and Mary, and the survivor of them;' and that during their joint lives they would be entitled each to one half the dividends, and upon the decease of either the fund would go to the survivor."

As against the bank, if the bank were a party to the suit, the deposit-book and the entry in its books would be evidence that it had received money from somebody, and had promised to pay an equivalent amount with its accumulations to " Elizabeth A. or Mary Ide, or the survivor of them." But this evidence alone would not be sufficient to establish that the bank was a trustee of this fund. Money deposited in a savings bank, unless there is an agreement to the contrary, becomes the property of the bank, and the bank becomes a debtor therefor. The evidence was that the bank promised to pay the amount of this debt to Elizabeth A. or Mary Ide, or the survivor of them. The bank would have performed this promise by paying it to either in the lifetime of both, or to the survivor, and would have thus discharged its obligation. No evidence is recited of which the legal effect was to constitute the bank a trustee of the fund, upon a trust to pay one half of the dividends to Elizabeth and one half to Mary during their joint lives, and, on the death of either, to pay the whole fund to the survivor.

It is contended that, on the facts which the jury must have found, the legal effect of the transaction was that the depositor gave the chose in action against the bank to Elizabeth and Mary in trust to distribute the dividends equally between them during their joint lives, and to hold the principal fund, on the death of either, as the property of the survivor.

We are of the opinion that such is not necessarily the legal effect of a deposit of money in the manner described. If one person deposits money in a savings bank to the credit of another, whether he thereby intends to give it to him is a question of fact to be determined by evidence.

If it is one of the rules of the bank that money shall not be paid except upon presentation of the bank-book, and the depositor retains possession of the bank-book, and never communicates to the person in whose name the deposit is made the fact that he has made the deposit, this is evidence upon the question whether, even if the depositor intended to make a gift, he has fully executed his intention so as to make the gift complete; and any evidence that the deposit was made in this form for any other purpose than to transfer the title to the person to whom it is credited, so that he may draw it for his own use and benefit, would of course be competent evidence upon the question whether a gift was ever intended. *Broderick* v. *Waltham Savings Bank*, 109 Mass. 149. *Clark* v. *Clark*, 108 Mass. 522. *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Mass. 228. *Pierce* v. *Boston Five Cents Savings Bank*, 129 Mass. 425.

It appears by the exceptions that "the court gave instructions to the jury as to what would constitute a perfected gift, to which no exception was taken." The ruling given to which exception is taken is predicated upon the jury's finding "that such gift was completed by a transfer and delivery, and by a surrender of all control on his part over the fund." If the jury found that the gift was completed, they must have found the terms of the gift, and who the donees were. But it is not clear what is meant in the instruction by this clause which we have just cited. The exceptions state that "the only evidence of any possession of the deposit-book was that Mary had the book when she withdrew the money," although it is previously stated that the defendant offered evidence tending to prove that the money

deposited was Mary's, and "that she kept full control of the bank-book." There is no evidence recited that Elizabeth ever had possession of the book. What then is meant by a transfer and delivery, and a surrender of all control on the part of the depositor over the fund? Apparently these words mean a transfer and delivery of the deposit-book by the depositor to Mary, and a surrender by him of all control over the fund to her, to the use of "Elizabeth A. or Mary Ide, or the survivor of them." If the depositor delivered this book to Mary, it is important to ascertain the circumstances attending the delivery. If the depositor, having made the deposit with an indefinite intention that the money should be for the use of Elizabeth or Mary, or the survivor, and, retaining the bank-book, had given neither any notice of the deposit, and afterward had given the book to Mary with the expressed intention that the money should belong wholly to her, the gift would be regarded as inchoate until the delivery of the book, and it would then become complete in Mary, and Elizabeth would have no right to the money, or any part of it. But Mary could accept the gift for Elizabeth as well as herself, if the gift was intended for the benefit of both. The book may have been delivered to her with the expressed intention that she should hold the property, which it represented, upon the trust described in the instructions of the court, and she may have agreed so to hold it; but the creation of such a trust must be established by evidence; and the form of this deposit and the delivery of the book are not sufficient to establish it. If this were a bequest of money to Elizabeth or Mary, or to the survivor, it might perhaps be held that "or" should be construed "and," and that the testator intended that Elizabeth and Mary should receive it in equal shares, if both were living at his decease, and that, if only one were then living, she should receive the whole bequest; but these words would not establish a trust for their joint lives, with remainder to the survivor. A gift of this deposit *inter vivos*, with a delivery of the book, is like a gift of money, as the deposit can be drawn at any time, and the donee at once obtains control over the fund. The title to the money passes when the gift is complete, and a present gift of money to A. and B. and to the survivor of them, if put into the possession of A. and B. with the intention

that they should have the use and control of it, would probably be held to be a gift to A. and B. in equal shares, and the words "to the survivor of them" would be rejected as inconsistent with the gift to A. and B. Future interests in money, if they can be established by oral testimony, must be established by clear and satisfactory testimony.

In the case at bar, no evidence is recited which would warrant the jury in finding that an active trust was created, such as is described in the instruction. There is no evidence that Mary agreed to hold the deposit or the money in trust during the joint lives of herself and Elizabeth. We think that, if this was a completed gift, on the evidence so far as it is before us, it was either a gift to Mary alone, or to Mary and Elizabeth jointly; and that it is for the jury to determine, upon all the evidence, which was intended by the donor; and that it is not now worth while to attempt to decide what the presumption would be if the only evidence was that this credit appeared upon the books of the bank, and that Mary had possession of the book corresponding therewith when she drew the money. What the other evidence was we do not know, but the instruction of the court, we think, may have misled the jury.

The exceptions state that the plaintiff offered evidence tending to prove that the amount drawn out by Mary "was put into the bank by the depositor as a perfected gift to the uses declared in and by the terms of the deposit-book already referred to;" and that this evidence consisted of the deposition of one Blodgett and other evidence. The nature of this other evidence does not appear. Blodgett was the treasurer of the bank, and the defendant objected to the seventh interrogatory and answer in his deposition. The witness had been asked in the sixth interrogatory to state whether, from an examination of the books, records and papers previously testified to have been in his custody as such treasurer, the bank had any business transactions with Elizabeth A. Ide, alone or in connection with Mary Ide, or the survivor of them, between certain dates named; to which he answered, " Yes, it did." The seventh interrogatory and answer were as follows: " *Int.* 7. If it did, what do the books, records and papers in your possession as such treasurer of said institution show? Please answer this question by giving an exact

transcript and copy of the entries upon your records and books in relation to said business, and also copies of all orders for money, if any, signed by said Elizabeth A. Ide or Mary Ide in relation thereto, one or both of them, giving dates and names in full. *Ans.* See the statement annexed." Annexed to the deposition was a statement purporting to be from the books of the bank. As the books were those of a corporation doing business in Rhode Island, they were not within the jurisdiction of the court, and copies of the books properly verified and attached to the deposition might be received instead of the books. As between the parties to this suit, the books would be evidence that there stood to the credit of Elizabeth A. or Mary Ide, or the survivor of them, and to the debit of the bank, at certain times, certain amounts of money. Whether, as connected with the other evidence, the books would be admissible for other purposes, need not be discussed, as the other evidence is not fully set out. Copies of books attached to a deposition should be admitted, if it appears by testimony that the copies have been compared with the original books, and are true copies. The seventh answer, in connection with other answers, we think is substantially such testimony. *Exceptions sustained.*