PHILIP S. LADD *vs.* ANDROSCOGGIN COUNTY SAVINGS BANK.

Kennebec.    Opinion July 15, 1902.

*Savings Bank Deposit.    Lost Book.    Notice.    Negligence.    Forged Order.*
*By-Laws.    Contracts.*

The contract between a savings bank and its depositors, in the absence of any by-law or regulation limiting the bank's liability, is the ordinary one of debtor and creditor.

Where payments are made by the officers of a savings bank on orders purporting to be signed by a depositor, but in fact forgeries, accompanied by the deposit book, of the loss of which the bank has not been notified, no question of negligence, either of the depositor or the bank, is involved in a suit by the depositor to recover his money, in the absence of any regulation requiring notice of the loss of the book.

On report.    Judgment for plaintiff.

Assumpsit to recover a savings bank deposit, the amount of which had been previously paid by the officers of the defendant bank to the American Express Co., acting innocently for a forger who had fraudulently obtained possession of plaintiff's deposit book.

The only provisions of the bank's by-laws having any bearing upon the case were as follows:—

### "WITHDRAWAL OF FUNDS.

Money deposited may be withdrawn, in whole or in part, by the depositor, or by any other person duly authorized, at any time without notice, when there are funds on hand unappropriated. As a rule, however, no payment above five hundred dollars will be made in the months of May or November, without previous legal notice from the depositor; and the Treasurer *may*, if the interests of the Bank demand it, at any time require depositors to give the notice provided by the law of the State and the By-Laws of the Bank. When depositors cannot appear at the Bank in person, to withdraw their deposits, they will be paid on their written order, properly witnessed, a form of which is given in this book.

The order must always be accompanied by the Deposit Book.

### DEPOSIT BOOKS.

All deposits are entered in the Books of the corporation, and a Bank-Book given to each depositor, in which every deposit made and every sum withdrawn will be entered. This book will be the voucher and the evidence of the depositor's property in the institution, and of the same validity as a note of hand. Applications for withdrawal of funds, whether in person or by order, must always be accompanied by the Deposit Book."

When the plaintiff's deposit was made he employed a messenger for that purpose, to whom the bank officers delivered the deposit book containing the regulations.

*H. M. Heath and C. L. Andrews*, for plaintiff.

*W. H. White and S. M. Carter*, for defendant.

While it is true that ordinarily the drawee of an order must satisfy himself of the genuineness of the signature of the drawer, we have in this case the element of the production of the book which is made the evidence of the property. Its production warrants the bank in assuming that the possessor is the depositor and the possession by the drawee of an order gives currency to the order, there being no suspicious circumstances connected with the transaction.

The book was carried back to the plaintiff containing the regulations printed therein, which he says he read, and he allowed his money to stay there. He was bound by these regulations as a part of his contract. *Gifford* v. *Rutland Savings Bank*, 63 Vt. 108, 11 L. R. A. 794; *Heath* v. *Portsmouth Savings Bank*, 46 N. H. 78, 88 Am. Dec. 194; *Wall* v. *Provident Savings Inst.*, 3 Allen, 96, 6 Allen, 320; *Reinstein* v. *Watts*, 84 Maine, 139.

These regulations specified that the book should be the evidence of his property in the bank, and they also require the production of the book for any payment to the depositor or on his order.

The plaintiff's own carelessness. or stupidity made possible the state of facts which actually exist. He kept these books in a trunk, locked, it is true, but with the key in easy access of any one familiar with his habits and surroundings. The inmates of the house knew he had these books. For years there was probably no hour of the day when a person who had this knowledge and could gain access to the house, could not have taken the key from Ladd's room, or from his clothing in the closet, opened the trunk and taken the books. As a matter of fact it would appear that a brother of the mistress of the house did do it, not once but several times and probably, from his connection with the family, was able to get the check cashed by Mr. Benjamin, the cashier of the village bank, whom Ladd says he had known for years.

The first order was presented on December 2, 1895, but Ladd did not discover the loss of the book until August 4, 1901. It may be said that the book was probably replaced and was actually in the trunk until August, 1900, when it was removed a second time. This may be true, but Ladd doesn't know whether it is or not. Had he taken the trouble to look at his book for once during all the years which elapsed between December 2, 1895, and September 1, 1900, he would have discovered either the loss of the book or the payment of the first order, and thereby have prevented the thief from obtaining the second payment. Had he sent the book to the bank, for the addition of dividends and comparison of the deposit at any time during these years, as common prudence dictated that he should, the same result would have been reached.

It would be difficult to find a case where the rule, that when one of two innocent parties must bear a loss it shall be the one by whose carelessness it was made possible, could be more equitably applied.

"Where a loss which must be borne by one of two parties alike innocent of the forgery, can be traced to the neglect or fault of either, it is reasonable that it should be borne by him, even if innocent of any intentional fraud, through whose means it has succeeded." *Gloucester Bank* v. *Salem Bank,* 17 Mass. 33; *Danvers Bank* v. *Salem Bank,* 151 Mass. 280, 21 Am. St. Rep. 450; *First National Bank of Crawfordsville* v. *First National Bank of Lafayette,* 4 Ind. App. 355, 51 Am. St. Rep. 221.

SITTING :  WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, PEABODY, JJ.

WISWELL, C. J.   This case differs from the preceding one of *Ladd* v. *Augusta Savings Bank,* in that this bank had no by-law or regulation limiting its liability in case a depositor's bank-book is lost or stolen, and the bank, without notice of such loss, makes a payment to a person who falsely personates the depositor and presents the book.

Even such a by-law, as was considered in the case referred to, does not apply when the mistaken payment is made to a person, who does not pretend to be the depositor, but who falsely claims to have authority from the depositor to receive the payment, as was decided in that case.

In this case the amount to the credit of the plaintiff in the defendant savings bank, on November 1, 1895, including the dividends credited by the bank up to and including that date, was the sum of $825.56.   He has never withdrawn any portion of this deposit.   But upon two occasions, December 2, 1895, and September 1, 1900, the bank made payments of $321, and $585.55, respectively upon orders purporting to be signed by the plaintiff, but both of which were in fact forgeries.   In each case the plaintiff's bank-book which had been fraudulently taken from his possession, was presented, and the amount paid entered therein to the debit of

the account. The bank had received no notice of the loss of the plaintiff's bank-book prior to making these payments, and its loss was not discovered by the plaintiff until after the last payment.

The liability of the bank rests entirely upon contract. No question of negligence, either of the plaintiff or of the bank officials, is involved. The contract in this case was the ordinary one of debtor and creditor, modified in some respects, unimportant in the decision of this case, by the bank's by-laws and regulations.

A by-law in relation to the withdrawal of funds contained this provision : "Money deposited may be withdrawn, in whole or in part, by the depositor, or by any other person duly authorized at any time without notice, when there are funds on hand unappropriated."

It follows that the defendant, which had received the plaintiff's money on deposit, under a contract to repay it, together with its portion of accumulated profits, to the plaintiff, or to some one duly authorized by him to receive it, and which has not repaid any portion of the deposit, either to the plaintiff or to any one authorized by the plaintiff to receive it, is liable in this action brought to recover the amount due.

The plaintiff is entitled to judgment for $1024.03, together with interest thereon to be computed in accordance with the stipulation of the parties from November 1, 1901.

*Judgment for plaintiff.*