Hillsborough,
Nov. 5, 1907.

## MANN, *Ex'r*, v. CARTER, *State Treas.*

74　345
f74　486
f74　510
f74　556
f74　558

When the legislature adopts the statutory language of another state, it is ordinarily presumed to have had in mind the existing decisions of such state defining the extent and purpose of the statute, and to have used the identical phraseology in the sense thus indicated.

Money deposited in a foreign savings bank and belonging to the estate of a person domiciled here at the time of his decease is constructively property within the jurisdiction of this state, is subject to the inheritance tax imposed by chapter 40, Laws 1905, and is not exempted from the operation of that statute by the fact that it is also liable to a similar tax in the state where the bank is located.

PROBATE APPEAL. Transferred from the January term, 1907, of the superior court by *Stone*, J.

*George B. French*, for the plaintiff.

*Edwin G. Eastman*, attorney-general, and *Joseph S. Matthews*, for the defendant.

WALKER, J. The plaintiff is the executor, under an appointment from the probate court of Hillsborough county, of the estate of Susan H. Mann, who died June 5, 1905, and who was at that time a resident of Nashua, in this state. A considerable part of

her estate consisted of deposits in savings banks located in Massachusetts. The plaintiff was also appointed ancillary executor of her estate in that state. April 6, 1906, he applied to the probate court of Hillsborough county to determine the question whether the deposits are subject to the collateral inheritance tax provided by the laws of this state. The judge of probate decreed that they were not subject to that tax, and the defendant appealed. The superior court sustained the appeal, and the plaintiff excepted. The laws of Massachusetts, if material, are made a part of the case.

In the recent case of *Thompson* v. *Kidder*, *ante*, 89, it was decided that the statute imposing a tax upon collateral legacies and successions (Laws 1905, *c.* 40) is not in conflict with the constitution as amended in 1903. The main point of that decision was that the constitution was amended for the purpose of authorizing the legislature to impose an inheritance tax upon the estates of deceased persons, under certain conditions, and that that purpose must be given an effect, though it introduces into the fundamental law ideas of disproportion in the raising of the public revenue antagonistic to those previously entertained on the subject of general taxation. No jurisdictional question was raised in that case. The deceased was domiciled in this state, and his entire estate, so far as appeared, was located and had its *situs* here. In the present case, while the deceased had her domicile here at the time of her death, a part of her estate consisted of deposits in savings institutions in another state; and it is insisted that the money so deposited is not subject to our inheritance-tax law.

The legislature of 1905 passed an act entitled "An act imposing a tax on collateral legacies and successions," the first section of which is as follows: "All property within the jurisdiction of the state, real or personal, and any interest therein, whether belonging to inhabitants of the state or not, which shall pass by will, or by the laws regulating intestate succession, or by deed, grant, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor, to any person, absolutely or in trust, except to or for the use of the father, mother, husband, wife, lineal descendant, brother, sister, adopted child, the lineal descendant of any adopted child, the wife or widow of a son or the husband of a daughter, of a decedent, or to or for the use of charitable, educational, or religious societies or institutions in this state the property of which is by law exempt from taxation, or to a city or town in this state for public purposes, shall be subject to a tax of five per cent of its value, for the use of the state; and administrators, executors, and trustees, and any such grantees under a conveyance made during the grantor's life, shall be liable

for such taxes, with interest, until the same have been paid."
Laws 1905, c. 40, s. 1. The primary question presented is, whether
the legislature intended by the language used to subject money
deposited in a foreign savings bank to the duty, impost, or tax,
when, upon the death of the depositor domiciled in this state, it
passes to parties not within the exceptions enumerated. What-
ever ambiguity there may be in the language of the legislature in
relation to this question disappears upon a consideration of the
material circumstances under which the statute was passed. The
section quoted is almost a literal copy of section 1, chapter 15, of
the Revised Laws of Massachusetts (Mass. Laws 1891, c. 425,
s. 1), while the other sections of the act are substantially the same
as the corresponding sections of the Massachusetts act. This coin-
cidence is persuasive evidence of a practical re-enactment here of
the foreign statute, and an adoption of the construction which the
highest court of that state had given to it. *Parsons* v. *Parsons*,
67 N. H. 419, 420; *Commonwealth* v. *Hartnett*, 3 Gray 450; End.
Stat., s. 371. The legislature is ordinarily presumed to have had
in mind, when adopting the statutory language of another state,
existing decisions of that state defining the extent and purpose of
the statute, and to have used the identical language in the sense
thus indicated.

*Frothingham* v. *Shaw*, 175 Mass. 59, was decided in 1899, six
years before the enactment of our statute, and it was there held,
upon a construction of the statute, that deposits in a foreign sav-
ings bank, belonging to the estate of a decedent resident in Mas-
sachusetts, were " property within the jurisdiction of the common-
wealth," within the meaning of Laws 1891, chapter 425, section 1,
and that the succession took place by virtue of the laws of the
commonwealth. See, also, *Callahan* v. *Woodbridge*, 171 Mass. 595;
*Greves* v. *Shaw*, 173 Mass. 205. That this construction was
adopted by the legislature when the act of 1905 was passed is,
therefore, reasonably certain, unless there are countervailing con-
siderations peculiar to the jurisprudence of this state which pre-
clude the inference that the legislature entertained that intention,
or unless such an intention is so manifestly opposed to the recog-
nized principles of judicial construction, as announced in our deci-
sions, as to support the conclusion that the foreign decision was
not discovered; or if discovered, that it was not recognized as a
correct exposition of the legislative purpose.

To hold that the decedent's deposits in another state, or her
right to them, constituted property in this state, within the mean-
ing of the act, is not only not in conflict with any decision of this
court, but is supported by the weight of authority elsewhere. She
was not a mere creditor of the institutions in which her money

was deposited. If the legal title to the money she deposited passed to the bank receiving it (*Berry* v. *Windham*, 59 N. H. 288, 290; *Robinson* v. *Dover*, 59 N. H. 521), she stood "in the same relation to the assets of the bank as stockholders to banks of discount." *Cogswell* v. *Bank*, 59 N. H. 43, 44. "The depositors are stockholders and not creditors." *Francestown Savings Bank Case*, 63 N. H. 138, 142; *Hall* v. *Paris*, 59 N. H. 71; *Bank Commissioners* v. *Banking Co.*, *ante*, 292. And in *Lewis* v. *Lynn Institution for Savings*, 148 Mass. 235, 244, it is said that "to the depositors themselves, the undertaking of the corporation is that it will receive and combine the deposits, and manage and use them to the best practicable advantage, according to the judgment of the trustees, and give to the depositors in just proportion among themselves the benefit of the result of such management. There is no absolute promise to repay to any depositor the full amount of his deposit, at all events. Such a promise to one depositor would imply that in case of loss he should be repaid out of the deposits of others. But the promise or undertaking of the corporation is the same to all. There is no promise to pay one at the expense of others. The promise is, in effect, to pay each depositor in full, with his dividends, provided the assets are sufficient; and if they are not sufficient, then to pay each one his proportionate share." It is thus apparent that the testatrix had a direct interest in the property, as well as in the management, of the banks in which she deposited her money, and that her position was in many respects analogous to that of a stockholder in a business corporation. She was in fact one of the owners of the property in the possession of the incorporated partnerships. If she had formed a partnership with two other persons for the purpose of buying and selling real estate, and each of the partners had put in an equal amount of money, the property of the partnership purchased with money so invested would belong to the partners in equal shares, subject to the equitable rights of third parties. But her proprietary right to the property would not disappear if the partners became incorporated and carried on the business under a corporate name. The technical change in the form of ownership and management would not diminish her substantial rights as a beneficial owner of the property.

Accordingly it is held that a stockholder's right is personal property, which has its *situs* for purposes of general taxation where the owner has his domicile. Helliwell Stock & Stockh., s. 11. And this principle is recognized and enforced in statutes relating to the taxation of stock in foreign corporations. "Personal property liable to taxation is, . . . III. Stock in corporations located out of the state, owned by persons living in the

state, except where either the stock or the property represented by it is taxed in the towns or states where the corporations are located." P. S., c. 55, s. 7; *Smith* v. *Exeter*, 37 N. H. 556; *Kimball* v. *Milford*, 54 N. H. 406. Since corporate stock in a foreign corporation owned by a resident here is thus deemed to be within the jurisdiction of this state, the deposits in a foreign savings bank by one domiciled here constitute property within the state, upon which the legislature may impose a tax. In other words, such a deposit is property which follows the person of the owner, and for many purposes it has his *situs*. *Mobilia sequuntur personam*.

Before the death of the testatrix her interest in the Massachusetts savings banks, created by her deposit of money therein, was property in this state, because she lived here; and no reason is perceived why, if the legislature had enacted a statute taxing the right of a resident to savings bank deposits in another state, the legislation would not have been valid, so far as the question of jurisdiction is concerned. It might have been held unconstitutional on other grounds (*Berry* v. *Windham*, *supra*; *Robinson* v. *Dover*, *supra*), but not on the ground of a want of jurisdiction, where the owner of the savings bank right resided here. When the property is physically in another state, where the owner must go to acquire complete control of his money, it does not follow that the state where the owner has his domicile has no jurisdiction with reference to it. This point is illustrated by cases holding that the personal property of a deceased person, though in another state, descends according to the law of his domicile.

"When an individual dies possessed of estate in different governments, it seems to be settled, as a general rule, that his personal property, or movable estate, is to be distributed among his heirs or legatees according to the law of the place in which he had his domicile at the time of his decease." *Goodall* v. *Marshall*, 11 N. H. 88, 89. "There is sufficient evidence that the actual domicile of the deceased was in New Orleans at the time of his death. . . . And the succession to personal property is governed exclusively by the law of the actual domicile of the intestate at the time of his death." *Leach* v. *Pillsbury*, 15 N. H. 137, 138; *Emery* v. *Clough*, 63 N. H. 552, 535.

In *Frothingham* v. *Shaw*, *supra*, it is said (*p.* 62): "If there are movables in a foreign country, the law of the domicile is given an extraterritorial effect by the courts of that country, and in a just and proper sense the succession is said to take place by force of and to be governed by the law of the domicile. Accordingly, it has been held that legacy and succession duties as such were payable at the place of domicile in respect to movable property wherever situated, because in such cases the succession or legacy

took effect by virtue of the law of domicile.  *Wallace* v. *Attorney-General*, L. R. 1. Ch. 1 ; Dicey Confl. Laws 785; Hanson's Death Duties 423, 526."

But it is argued that in the last analysis of this principle it will be found that these statements are too broad, and that in the case of an ancillary administration the personal property passes by virtue of the law of the forum, though in the manner indicated by the laws of the deceased's domicile.  It is true that the forum furnishes the judicial machinery by which the title to the property is established and made effective ; but it does not create the title by virtue of which the claimant is judicially recognized as the owner. That is derived from the deceased, the disposition of whose personal property is authoritatively determined by the law of his domicile, because the property in contemplation of law is deemed to be within that jurisdiction for the purpose of inheritance. Hence its law must determine the question of title, and be binding upon all other common-law courts.  If, for instance, it is finally decided by the courts of the domicile that a specific legacy belongs to A and not to B, the fact that the particular property bequeathed happens to be in another state, and that resort to its courts is necessary to obtain possession of it, would not authorize the courts of that state to put a different construction on the will and to decide accordingly that the property belonged to B. Although the law of the foreign jurisdiction might be entirely different from that of the domicile, upon the point presented, the latter, which the testator is presumed to have had in mind and to have substantially incorporated into his will, can alone effectuate his intention ; and the property passes under it, as much as though the testator in the state of his domicile had given or sold it to another who had transported it to the foreign state.  If the donee or vendee was then obliged to defend his claim to the property and succeeded, no one would contend that his title judicially established in the foreign state passed to him by virtue of its laws.  It was vindicated in its courts and under its laws, but it passed by virtue of the laws of the domicile.  It follows as a logical sequence, that when personal property of a deceased person happens to be in another state at the time of his death, the title of the successor, whether by inheritance or by will, passes under the law of the domicile, though ancillary proceedings may be required to get physical control of the property.

In *Cross* v. *Trust Co.*, 131 N. Y. 330, it is held that an action cannot be maintained to declare invalid a testamentary disposition of personal property in that state, made in and by a resident of another state, lawful and valid at the place of the testator's domicile, but which would be invalid if the will had been one governed

by the laws of New York, although the beneficiaries may be domiciled there. In the opinion it is said (*p.* 341) : "Should our legislature deem it for the public good to repeal the statute relating to wills and to provide that all property should, upon the death of the owner, pass under the laws of intestacy, a disposition by will of personal property, actually within the territory of the state, but owned by a person domiciled in another state, would still be valid providing it was valid by the law which governed the owner. When it is urged that we are bound by foreign law as to all the formal requisites of a will as a testamentary instrument, the capacity of the testator to make it, and its legal construction, meaning, and effect, and not bound by such law with respect to the particular bequests by which the testatrix has distributed her property among her heirs and next of kin, it is not perceived that such a distinction has any sound reason or principle to rest upon. A cause of action or right to property created by the statute laws of another state, and arising there, is recognized here and may be enforced, though our own statute on the same subject may be different in details." *Dammert* v. *Osborn*, 141 N. Y. 564, 567.

From the foregoing discussion the conclusion follows: (1) That the legislature of 1905 presumably adopted in the statute in question the construction put upon identical language in the Massachusetts statute; (2) that the deceased's right created by her deposit in foreign savings banks is a property right—in fact, is property; (3) that such property was at least constructively within this jurisdiction at the time of her death; and (4) that it then passed under her will by force of our statute of wills. If these conclusions are sound, the deposits in question fall within the operation of the statute creating a so-called inheritance tax upon legacies.

But it is further contended that such a construction of the statute results, or may result, in double taxation; that is, in the impoposition of one inheritance tax in this state and of another in the state where the property is in fact situated. This objection of course would have no practical significance if the property was situated in a state having no statute of that character. Suppose these deposits were in savings banks in Rhode Island, where, it is said, there is no inheritance-tax law : in such a case it would be necessary to hold, in order to be consistent with the argument, that the imposition of the tax or duty here would be legal and right, but that when they are in banks in a state having such a statute the tax here would be illegal and wrong. Inasmuch as the statute makes no such distinction, as it does in the case of the taxation of stock in a foreign corporation owned by a resident (P. S., *c.* 55, *s.* 7), such an intention on the part of the

legislature cannot be found. If the imposition of such a tax in each of two states upon bank deposits passing by will or inheritance is in some sense " double taxation," it is not obnoxious to any constitutional principle involved in, or governing, the inheritance-tax law. As the property is deemed to be here so as to be controlled by our laws in its devolution, those who acquire title to it, through the operation of our laws relating to the estates of deceased persons, must take the benefits charged with the burdens imposed by those laws. " The fact that two states, dealing each with its own law of succession, both of which the plaintiff in error has to invoke for her rights, have taxed the right which they respectively confer, gives no cause for complaint on constitutional grounds." *Blackstone* v. *Miller*, 188 U. S. 189, 206, 207. The fact that the property may be subject to a similar burden in another state does not deprive this state of its power to impose the tax here upon the property which passes by inheritance or by will under our laws. The material inquiry relates to the legality of the tax in this jurisdiction.

" The fact that the plaintiffs' ice, stored in this state, has been taxed to them in Massachusetts, and that they have paid the tax there, is immaterial. The question is : Is it rightfully and legally taxable here ? If it is, then its taxation in another state does not render its taxation here wrongful and illegal." *Winkley* v. *Newton*, 67 N. H. 80, 82. The legislature did not intend to impair the effectiveness of the inheritance-tax law by making its operation dependent upon the action or non-action of other states with reference to personal property of resident decedents, which might have a physical *situs* therein ; and there is no constitutional provision limiting the power of the legislature to make a collateral inheritance tax applicable to all property passing under our laws. *Thompson* v. *Kidder*, *supra*. It is inexact and misleading to say that this result sanctions double taxation, which the policy of this state does not tolerate. Whether the burden imposed by the inheritance law is properly called a tax, it is unnecessary to inquire ; for if it is, the legislature has not attempted to impose more than a single tax on the property of a decedent passing collaterally under our laws. If some other state makes a claim to the property under its tax laws and for the support of its institutions, the exercise of such power, whether rightful or wrongful, does not make the exercise of similar power by this state, for the support of its institutions, illegal on the ground of double taxation. The two burdens are created by two different and independent states, for wholly different local purposes, and are as distinct and as irrelevant, the one to the other, on the question of

double taxation, as were the two taxes assessed upon the plaintiffs' ice in *Winkley* v. *Newton, supra.*

This result is also in accord with the general trend of the authorities upon the subject. As said in *Hartman's Case,* 70 N. J. Eq. 664, 667 : "The great weight of authority favors the principle adopted by the New York court of appeals, holding that the tax imposed is on the right of succession under a will, or by devolution in case of intestacy; and that as to personal property, its *situs,* for the purpose of a legacy or succession tax, is the domicile of the decedent, and the right to its imposition is not affected by the statute of a foreign state, which subjects to similar taxation such portion of the personal estate of any non-resident testator or intestate as he may take and leave there for safe keeping, or until it should suit his convenience to carry it away." In addition to cases already cited, see : *Hopkins' Appeal,* 77 Conn. 644 ; *Bridgeport Trust Co.'s Appeal,* 77 Conn. 657 ; *Matter of Swift's Estate,* 137 N. Y. 77 ; *Matter of Houdayer,* 150 N. Y. 37 ; *State* v. *Dalrymple,* 70 Md. 294 ; *Eidman* v. *Martinez,* 184 U. S. 578, 581 ; Dos Passos Inher. Tax, *s.* 29 ; Dicey Conf. Laws 682, *et seq.* But see *In re Joyslin's Estate,* 76 Vt. 88.

*Exception overruled : appeal sustained.*

All concurred.