## Pursiful v. First State Bank of Pineville.

(Decided Dec. 1, 1933.)

H. H. FUSON and J. B. SNYDER for appellant.

JAMES H. JEFFRIES for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellee, First State Bank of Pineville, is a state bank which has for a number of years been doing a general banking business at Pineville, Ky. As part of its banking activities, it received savings accounts from depositors upon which it paid 4 per cent. interest.

during the times here involved. The appellant, Otto Pursiful, in the year 1923 opened up a savings account in the appellee bank and from time to time made deposits in and withdrawals from that account. On July 2, 1928, there was a net balance due the appellant on the savings account of $3,000. Appellant made no further withdrawals from this account. In May, 1931, when he presented his passbook for the purpose of having the interest which had accrued in the meantime properly credited, he was advised by the cashier that he then had to his credit in this savings account the sum of $2,209.92 only. Alleging that the true amount due him from this savings account was as of July 1, 1931, $3,784.67, appellant brought this suit to recover that amount. The discrepancy between the amount claimed by the appellant and the amount which the appellee admitted it owed came about in this fashion: During the time the appellee had this savings account at the bank, he was operating about six miles from Pineville a filling station under the trade-name of the "Paige Service Station." He had also for a number of years been operating a store just across the river from his service station. This store was run in his own name, "Otto Pursiful." He had two checking accounts with the appellee, one in the name of the "Paige Service Station," and the other in the name of "Otto Pursiful." From time to time one or both of these checking accounts would be overdrawn. To make good such overdrafts, the bank would withdraw an appropriate amount from the savings account of Otto Pursiful and credit it to the checking account of the "Paige Service Station" or of "Otto Pursiful," as the case might be. Sometimes the amounts so withdrawn would leave a small balance over the overdraft, and this would remain in the checking account of Otto Pursiful or the Paige Service Station as such withdrawal was credited. The bank claims it notified Mrs. Pursiful, who did most of the banking business for her husband, of what it was doing. It is not shown that Otto Pursiful actually knew of how the bank was dealing with his overdrafts, but it is shown that there was returned to him each month his canceled checks, together with a bank statement of the condition of these two checking accounts. It is agreed that there was issued to Pursiful, as a savings account depositor, a passbook in which certain

rules and regulations concerning the savings account were set out, among which was one to the effect that there could be no withdrawals from the savings account without the production of the passbook upon which any such withdrawals would be entered.

To the suit brought by the appellant, the bank presented a double-barreled defense: First, it contended that it had a right in order to protect Pursiful's overdrafts to withdraw the sums it did from Pursiful's savings account even though his passbook was not presented and such withdrawals were not entered therein; secondly, if in error as to this, it contends that it certainly had a right now that it was sued to offset any claim Pursiful had against it to the extent of any claims it had against him for his overdrafts it had paid. In the latter event, as it would have been entitled to 6 per cent. on the overdrafts paid from the time of payment and Pursiful was only earning 4 per cent. on his savings account, he was not prejudiced by the way the bank had treated his accounts no matter whether the court sustained its right to withdraw from the savings account or simply allowed the offsets. Strenuously denying the right of the bank to protect the overdrafts by withdrawals from the savings accounts, Pursiful further contended that as to the claimed right of offset, there was none in law, and further that there was no mutuality of claims since the general store was owned by his wife or at least by a partnership composed of himself and his wife and the checking account of "Otto Pursiful" was the account of his wife or of this firm. The court gave judgment for the appellant only in the sum for which appellee had offered to confess judgment; that is, the amount of the savings account less the overdrafts. Pursiful has appealed.

It is conceded that as a general proposition, a deposit of money in a bank, at least on open account, establishes the relation of debtor and creditor between the bank and the depositor. Williams v. Rogers, 14 Bush, 776; Burnam v. Commonwealth, 228 Ky. 410, 15 S. W. (2d) 256. No reason can be seen why any difference should be made between such an account and a savings account, at least where the bank is, as here, a commercial bank, with stockholders, organized for profit, engaged in general banking business and maintaining a savings account department as part of such general

banking business. Hence according to the weight of authority, if there is no by-law or regulation limiting the liability of a bank with reference to its savings account, and no agreement to the contrary (and there was none in the instant case), a deposit of money on savings account creates the relation of debtor and creditor between the depositor and the bank. State v. San Francisco Savings & Loan Soc., 66 Cal. App. 53, 225 P. 309; Lippitt v. Thames Loan & Trust Co., 88 Conn. 185, 90 A. 369; Ward v. Johnson, 5 Ill. App. 30; Ladd v. Androscoggin County Sav. Bank, 96 Me. 520, 52 A. 1016; Mercantile Savings Bank of Baltimore City v. Appler, 151 Md. 571, 135 A. 373; Ide v. Pierce, 134 Mass. 260; Fiocchi v. Smith (N. J. Ch.) 97 A. 283; In re Wilkins' Will, 131 Misc. 188, 226 N. Y. S. 415; Leaphart v. Commercial Bank, 45 S. C. 563, 23 S. E. 939, 33 L. R. A. 700, 55 Am. St. Rep. 800; Pope v. Burlington Sav. Bank, 56 Vt. 284, 48 Am. Rep. 781; Deal's Adm'r v. Merchents' & Mechanics' Savings Bank, 120 Va. 297, 91 S. E. 135, L. R. A. 1917C, 548; Zinn v. Mendel, 9 W. Va. 580. The cases which appellant cites to the contrary are from states where savings banks are mutual affairs, the profits being divided among the depositors, and the relative rights and obligations between such banks and depositors are regulated by statute. See Mann v. Carter, State Treasurer, 74 N. H. 345, 68 A. 130, 15 L. R. A. (N. S.) 150. Such cases have no application to the state of case we have here. The appellee is not a mutual savings bank but an ordinary commercial bank, with stockholders, organized for profit which, if any, goes to the stockholders and not the depositors. We have no statute comparable to those in the New England States under which mutual savings banks are organized. It follows, therefore, that these cases relied upon by appellant are not in point and do not militate against the conclusion we have reached as to the relationship existing here between Pursiful and the bank with reference to his savings account.

The relationship existing between Pursiful and the bank with reference not only to his savings account but also his open account being that of debtor and creditor, it necessarily follows that when sued by Pursiful on his savings account, the bank could set off against his claim whatever claims it had against him for his overdrafts paid by it. Such being true, it will not be necessary to

determine whether the bank could make the withdrawals it did from Pursiful's savings account or not.

Pursiful argues, however, that there was no right to set-off here because the "Otto Pursiful" account was not his but that of his wife, or at least that of a firm composed of himself and his wife, and that hence the claims sought to be offset were not mutual. Of course, this does not go to the Paige Service Station account, for there is no evidence to show that this account was aught else but that of Pursiful, who simply did business under that trade-name. As to the "Otto Pursiful" account, the evidence is extremely meager that it was confined to the activities of the store. But conceding that it was, we yet find that this store had for years been conducted by Pursiful himself. He claims that about 1926 he "turned the store over to his wife to run." Whether this means that he turned it over to his wife to run for him or gave it to her to remains in doubt. If it means he gave it to her to run as her own or even as a partner, there is no evidence that the bank knew of this change of ownership of the store or the account, nor was the transfer recorded, as section 2128 of the Statutes requires transfers like this between husband and wife to be recorded to be good as to third parties. The bank being in ignorance of such claimed transfer had the right to consider the account as continuing to be that of Otto Pursiful himself and to deal with it as such, and hence its right to the set-off here asserted was not affected by this claimed secret transfer between husband and wife.

The judgment of the lower court being in accord with these views, it is affirmed.