Merrimack,
June 21, 1938.

JOHN W. CADBURY, JR. & a., *Trustees.*

*v.*

CUTHBERT PARRISH & a.

466

*J. Edward Flynn* and *Frank E. George* (*Mr. George* orally), for the life beneficiaries.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Piper* orally), for Alice R. Turner.

*Dudley W. Orr* (by brief and orally), for the guardian *ad litem*.

MARBLE, J. Although the state in which the testatrix intended the trust to be administered is presumptively the state of her domicile at the time of her death (Am. Law Inst., Restatement of Conflict of Laws, s. 298, Comment *a;* see *Mann* v. *Carter*, 74 N. H. 345), it should be borne in mind that the will was made in Pennsylvania at a time when the testatrix was domiciled in that state, that one of the trustees named by her was a trust company doing business in Pennsylvania, and that the will was executed only a few years after the will by which she acquired much of the stock in question had been construed by the Pennsylvania court.

"Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary is wasting property, the trustee is under a duty to the beneficiary who is entitled to the principal, either (a) to make provision for amortization, or (b) to sell such property." 1 Am. Law Inst., Restatement of Trusts, s. 239. "This general rule, which is designed simply to give effect to the intention of the testator, will, however, yield wholly or in part whenever he manifests an opposite

or different intention, or when it cannot be applied without defeating the purposes of the bequest." *Healey* v. *Toppan*, 45 N. H. 243, 263; *Langley* v. *Farmington*, 66 N. H. 431, 433.

"Among the circumstances tending to show such an intention are: (1) the specific mention in the instrument of the property, particularly where it is known to the settlor to be wasting property and especially where it comprises the whole of the trust property; (2) a direction or permission in the instrument to retain the property, although no specific provision is made with respect to the receipts from the property; . . . (5) the purposes of the trust including the relationship between the settlor and the various beneficiaries; (6) the fact that the settlor in dealing with the property prior to the creation of the trust has dealt with the receipts as income." 1 Am. Law Inst., Restatement of Trusts, s. 239, Comment *e*. Where the subject-matter of the property devised or bequeathed in trust for successive beneficiaries includes mines, further factors which may be considered in determining the settlor's intention comprise the following: whether or not the mines were opened prior to the creation of the trust, and whether the trust estate included other property which was productive of income. *Ib.*, Comment *g*. See 4 Bogert, Trusts and Trustees, s. 828, *pp.* 2416, 2417, and cases cited.

While many of the factors enumerated above exist in the present case, the decisive circumstance, in our opinion, is the fact that the testatrix, who must have understood the purport of the decision in the case of her grandmother's will (which involved an adjudication of the same question here presented) saw fit in making her own will to direct her trustees to pay the "net income from said Trust" to "Cuthbert Parrish, for his life," with no specific provision for amortization.

The following paragraphs are quoted from the opinion of the court in the case referred to:

"The auditing judge disposed of this case on the theory that the shares of stock in the three companies, which owned the coal mines and leased the same upon royalties, were wasting investments, to which the rule of *Howe* v. *Earl of Dartmouth*, 7 Ves. 137, would apply, except for the power given in the will to the trustee to retain investments existing at the date of the death of the testatrix. After attentive consideration, we are satisfied that the auditing judge was correct in awarding the dividends as income to the life-tenants.

"We are, however, of the further opinion that the same result may be reached along another line of reasoning. The corporations,

whose shares were owned by the testatrix and which she empowered her trustee to retain, were each the owner of a single mine already open in the lifetime of the testatrix. Her first stocks were acquired by her in 1858, and she increased her holdings at various times until 1898. She made her will in 1909 and died in 1916, so that for many years prior to the execution of her will and up to the date of her death she had received dividends upon these stocks precisely similar to those in question. In fact, as we are informed, these coal companies were close corporations, organized for the very purpose of leasing the coal properties belonging to the family of the testatrix.

"Now, it is clear that if the testatrix had been herself the owner of these coal mines, and had devised them to certain persons for life, with remainder to others, the life-tenants would have been entitled to the entire income derived from royalties on the coal mined, even if the leases ran to the exhaustion of the coal . . . . The same result should follow if the testator, instead of being the sole owner of the mines, was a tenant in common with others, and it is immaterial that the gift was made in the form of a trust . . . . This being so, the fact that her interest was represented by shares of stock in the mine-owning companies is really immaterial, especially in view of the fact that she empowered her trustee to retain the investment . . . . There is no reason apparent to us why we should not determine here that these dividends, being derived exclusively from royalties on coal taken from mines open at the death of the testatrix, belonged, as such, to the life-tenants . . . .

"We are of opinion, moreover, that this accords with the intention of the testatrix. For fifty years before she made her will, she had been receiving these royalty dividends, and when she directed her trustee to pay to her nephews and nieces 'the interest, income and profits' of her residuary estate, to be retained in specie at the discretion of her trustee, of which these stocks constituted a considerable part, it seems to us that she intended the life-tenants to receive as income the dividends which she herself had regularly received for so many years."

Counsel for the remaindermen by a meticulous examination of the language of the two wills seek to show a purpose on the part of the testatrix to apportion the dividends. They call attention to the fact that Elizabeth C. Roberts in her will directed her trustees to collect and receive "income, interest and profits" and then to pay "income, interest and profits," explicitly so designated, to the life tenant, while the testatrix in the present case, though directing the

trustees to collect and receive "rents, income, issues, dividends and profits," yet authorized them to pay to the life beneficiaries only "the net income from . . . said Trust."

It should be noted that the net income thus to be paid is the sum remaining "after paying out of said [gross] income all lawful costs, charges, taxes, commissions and expenses incident to the care and management of said Trust." The word "income," as here used, is a broad and inclusive term, and we find nothing in the words, "net income," which follow the above-quoted phrase, to indicate the intent for which counsel contend.

In their brief counsel for the remaindermen concede that the testatrix inherited the stocks in question from her grandmother, that she knew the terms of her grandmother's will, and that she had "full knowledge of the distribution ordered by the Pennsylvania court." She must also have known that substantial reserves had been set aside which offset in part the depletion of the coal deposits. Under these circumstances if she desired to provide for amortization, it is inconceivable that she would not have adopted clear and direct language to accomplish that result.

The fact that there has been for many years an apportionment for income-tax purposes has slight bearing on the question transferred. And the same is true of the tenth clause of the will incorporating a spendthrift provision for the protection of the life beneficiaries—a provision which is invalid in this jurisdiction. *Brahmey* v. *Rollins*, 87 N. H. 290.

The trustees are advised that no amortization is authorized and that the dividends in question should be treated as income and paid to the life beneficiaries.

The discretion vested in the named trustees does not appear to have been so vested because of personal confidence reposed in them. *Fowler* v. *Hancock, ante* 301. The question need not be decided, however, for the trustees do not state that they contemplate the exercise of any discretionary power, and they are not entitled to advice concerning a contingency which may never occur. *Gale* v. *Gale*, 85 N. H. 358, 361, and cases cited.

*Case discharged.*

All concurred.