MARY E. BOARDMAN ET AL. *v.* CONNECTICUT SAVINGS BANK ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued January 9—decided February 26, 1947

*Morris Tyler,* for the appellant (named defendant).

*J. Warren Upson,* with whom, on the brief, was *William J. Secor, Jr.,* for the appellants-appellees (plaintiffs).

*Curtiss K. Thompson,* with whom were *Albert H. Barclay* and, on the brief, *Albert H. Barclay, Jr.,*

for the appellee (defendant First National Bank and Trust Company).

JENNINGS, J. The plaintiffs had a verdict against the defendant savings bank based on an altered withdrawal slip and a forged indorsement. The plaintiffs and that defendant have appealed. The codefendant, the First National Bank, which had a verdict, has filed a bill of exceptions. This situation has resulted in a very complicated record. The appeal of the defendant savings bank will be considered first in an attempt to simplify the issues.

The plaintiffs, Mary E. Boardman, ninety-three years of age, and her daughter, Dr. E. Irene Boardman Kathan, hereinafter referred to as Dr. Boardman, offered evidence to prove and claimed to have proved the following facts: On January 9, 1944, the plaintiffs had a joint savings account in the Connecticut Savings Bank. On that day Dr. Boardman and all of the members of her family were ill and there was no one to care for her mother. Arrangements were made to have the latter taken to the Brown convalescent home, and Roy F. Brown, the proprietor, came to get her late that afternoon. The plaintiffs agreed with Brown that Mrs. Boardman should pay $75 per month in advance, and the plaintiffs decided to use the money in their joint account to pay this sum.

Dr. Boardman started to make out a withdrawal slip to send to the bank with the bankbook but was persuaded by Brown to make out another to be given to him with the bankbook so that he could get the money promptly on the next day. Both plaintiffs signed the slip, which was made out for $75 with a check mark opposite the word "Cash." On

January 10, Brown presented the bankbook and the slip, altered by him to read $5000, to the savings bank and asked for cash. The paying teller verified the plaintiffs' signatures and conferred with the chief teller. It was decided that cash could not be paid but that a check payable to the order of Dr. Boardman could be issued. The slip was in the form of a receipt to be used when the depositor personally presented the bankbook, rather than an order permitting another to draw money. The paying teller altered the withdrawal slip to make it an order by writing thereon "Pay to the order of R. F. Brown," placed a check mark opposite the word "Check," initialed the slip and stamped the date, January 10, 1944, above the date placed thereon by Dr. Boardman. Brown was then required to indorse the withdrawal slip. At no time before the check was given to Brown was either plaintiff consulted. The paying teller then gave Brown a check drawn on the First National Bank of New Haven, payable to the order of Dr. Boardman in the amount of $5000 and signed by the paying teller. The transaction was entered on the plaintiffs' ledger card.

On January 11, Dr. Boardman was still sick in bed. On that day Brown visited her in her room and she, at his request, signed her mother's ration books, accepted a receipt for the first month's board and signed her name in Brown's receipt book, which contained nothing but white pages. Brown attached the $5000 check with mending tape to the back of the page of the receipt book which Dr. Boardman had signed and traced her signature on the check. He then deposited the check with its forged indorsement in his account in the Second Na-

tional Bank in New Haven and left for California. He returned about a month later and was convicted of larceny. Dr. Boardman discovered the fraud when she went to the bank to get the money to pay the second month's board on February 10, 1944. Neither plaintiff ever had possession of the check for $5000. The withdrawal slip had been subjected to a chemical process as a result of which there was a yellowing under the words "five thousand" and a slight "feathering" of the writing over that space which was not, however, discernible to the naked eye. On February 10, 1944, a very distinct letter "S" appeared on the withdrawal slip under the word "five" where it had not been completely eradicated.

There was no dispute about the dates and order of events. The claims of proof of the defendants emphasized the large amount of business done by the savings bank, and it was their claim that Brown attached the check to the receipt book in such a way that Dr. Boardman actually indorsed the check with her genuine signature when she thought she was signing a blank receipt. They claimed in any event that Dr. Boardman was negligent in giving Brown the withdrawal slip and bankbook and in writing her signature in the receipt book and that that negligence was a proximate cause of the plaintiffs' loss.

In answer to interrogatories, the jury found that the indorsement on the back of the check for $5000 was not written by Dr. Boardman and that neither plaintiff had the check in her possession on or before January 12, 1944 (the date of its deposit in the Second National Bank).

The finding is not subject to correction in any re-

spect material to the issues on appeal. The case was pleaded and tried on the erroneous assumption by all parties that there was an exculpatory clause in the by-laws of the savings bank protecting the latter against forged indorsements and stolen bankbooks. The plaintiffs alleged negligence on the part of the savings bank because of this erroneous assumption. This unnecessarily complicated the issue. All the plaintiffs had to allege, as they did, was their deposit, their demand for its payment and the refusal of the bank. See *Chase* v. *Waterbury Savings Bank,* 77 Conn. 295, 300, 59 A. 37; *Eaves* v. *People's Savings Bank,* 27 Conn. 229, 233.

A group of the assignments of error relate to the disallowance of an amendment offered by the savings bank broadening its claim that the plaintiffs were guilty of contributory negligence and to the charge and refusal to charge with reference to this defense. Under the admitted facts, neither negligence nor contributory negligence had any place in the case. The plaintiffs signed a slip in the form of a receipt on which they alone could get the money, dated January 9, 1944 (Sunday), and payable in cash. The teller, without consulting them, changed it to a withdrawal order payable to Brown by check and changed the date to January 10 (Monday). The bank failed to follow the directions on the slip signed by the plaintiffs, and when later the plaintiffs demanded the return of their money it became liable as a matter of law for the breach of the implied agreement arising out of the deposit of the money. This was to repay it to the plaintiffs or to some one duly authorized by them to receive it. *Eaves* v. *People's Savings Bank,* supra; *Ladd* v. *Savings Bank,* 96 Me. 520, 524, 52 A. 1016. This conclusion

also dispenses with the necessity of considering the assignments of error directed to the charge and omissions to charge with reference to the indorsement of the $5000 check.

The remaining assignments of error are without merit. They relate for the most part to claimed overemphasis or, on the other hand, to failure to apply the law to the facts. Furthermore, not all of them are based on objections to the charge made in accordance with Practice Book, § 156. While the charge may be subject to criticism on both grounds, no reversible error has been found.

The case was thoroughly tried for over a week and it would serve no useful purpose to review the evidence in detail. As the trial court stated in its memorandum on the motions to set aside the verdict: "As trier of the facts the jury could reasonably have reached the verdict that it did." There was no error in the refusal of the trial court to set aside the verdict.

This conclusion, of course, makes it unnecessary to discuss the bill of exceptions of the national bank. The plaintiffs stated in argument that if no error was found on the appeal of the savings bank they did not press their appeal. As we have so found, their appeal in effect is withdrawn. See *Carlino* v. *Meriden,* 132 Conn. 394, 396, 44 A.2d 823.

There is no error on the appeal of the Connecticut Savings Bank. The appeal of the plaintiffs has been withdrawn.

In this opinion the other judges concurred.