SAMUEL E. MERWIN, TRUSTEE, *vs.* SARAH E. AUSTIN.

New Haven Co., June T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

*A* signed the note of *B* as his surety. The note fell due and was protested for non-payment. Soon after *B* was carried into insolvency by his creditors and afterwards *A* was compelled to pay the note. In a suit againit *A* by *B's* trustee in insolvency upon an account of *B*, it was held that *A* had a right to set off the amount of the note against the claim.

When the note fell due and was not paid, *A*, being the sole solvent debtor upon it, was at once entitled to a credit by *B* of the amount upon his claim.

And it made no difference that the note was not paid until after *B* had been carried into insolvency.

Merwin v. Austin.

Nor that A up to the time that B was adjudicated an insolvent, had supposed him to be solvent.

A trustee in insolvency, while he has a right in behalf of creditors to set aside preferences and fraudulent conveyances, yet, as a general rule, takes the estate subject to such burdens as the debtor has put upon it and to such equities as would have been good against him.

[Argued June 12th—decided September 13th, 1889.]

ACTION for goods sold to the defendant and for money paid for or advanced to her, by one Gilbert, who had since become an insolvent debtor and of whose estate in insolvency the plaintiff was trustee; brought to the Superior court in New Haven County. The defendant pleaded a set-off against the whole claim. The following statement of the facts was agreed upon by the parties.

Elijah Gilbert, of New Haven, was, on the 10th day of December, 1888, adjudicated an insolvent debtor by the court of probate for the district of New Haven, and on the 13th day of December the plaintiff was appointed and qualified as trustee of his insolvent estate.

Gilbert is uncle to the defendant, and has been for many years a merchant in the city of New Haven, and uncle and niece have been for many years members of the same family.

The defendant is unacquainted with business matters, and inherited from her father all the property that she has, in value about $30,000. Her father died about 1883, and for many years before his death was in partnership with Gilbert. After his death Gilbert settled his estate and arranged the partnership affairs, and has, since the death of her father, had entire charge and management of the defendant's property. She wholly relied upon him, and was accustomed to respect his wishes and to do what he requested in respect to all business matters.

The defendant's property consisted almost wholly of real estate, and Gilbert collected the rents and looked after the property. A large part of her property consisted of an undivided one-half interest in the land, with the store and buildings thereon, on the corner of Elm and Church street

in the city of New Haven.    The other one-half interest was owned by Gilbert.

Since her father's death the defendant has kept house in the homestead, and her uncle has boarded with her in the same manner that he did with her father before his death.

The claim of the plaintiff against the defendant consists, first, of certain sums of money, either paid out by Gilbert for the defendant, or by him furnished her from time to time, in the years 1887 and 1888 at her request, amounting to $3,423.33 ; and secondly, of an account on book for groceries furnished her by her uncle, amounting to $1,196.30 ; and thirdly, a small amount arising out of a rent and expense account on some real estate, amounting to $13.39; making in all the sum of $4,633,02.

The defendant admits the correctness of the whole account of Gilbert against her, but claims that there is no liability on her part to the plaintiff as trustee, under the facts stated.

Since the first day of January, 1885, at which time the defendant's father's estate was settled, to the time of Gilbert's insolvency, he occupied exclusively the store and appurtenances on the corner of Church and Elm streets, one undivided half of which belonged to the defendant.   Such occupancy by Gilbert was the continuance of the business formerly carried on at the same place by her father and Gilbert, and was with the consent of the defendant and under an agreement between her and Gilbert that he should pay her a fair rental therefor, amounting to $125 for each three months.

The trustee occupied the same premises from the 10th day of December, 1888, to January 1st, 1889, and it is agreed that the defendant has a just and valid claim against her uncle and the plaintiff as such trustee on this account for the sum of $2,000, unless the same has been paid by the money paid and furnished, as hereinbefore stated, as the foundation of the plaintiff's claim against the defendant.

Sometime in May, 1888, Gilbert was indebted to the City Bank in the sum of $10,000, evidenced by two promissory

notes, each for the sum of $5,000, which notes the defendant had, at his request, signed as surety, and the City Bank had discounted the notes for Gilbert upon the credit of the defendant's name, as well as upon his credit, and the proceeds of the discount were received by Gilbert and used in his business.

One of these notes fell due October 22d, 1888, and was renewed by a similar note in all respects, and for the sum of $5,000, and was also signed by the defendant for the accommodation of Gilbert, and was in like manner discounted by the bank. The other note became overdue and unpaid on the 13th day of November, 1888, and remained so overdue and unpaid until the defendant was obliged to pay it on the 22d day of January, 1889. On the 13th day of November, when this note so became overdue and unpaid, the City Bank notified the defendant of the fact and that the bank should look to her for payment. On the 22d day of January, 1889, upon the demand of the bank, the defendant was compelled to pay and did pay the sum of $8,850.20 on account of the notes, and now holds the notes as her property. The difference between the face of the notes and the amount paid by the defendant consists of a balance of deposit account, which, at the time of his failure, Gilbert had with the City Bank, and which was by the bank applied in part payment of said indebtness of $10,000.

On the 2d day of July, 1888, Gilbert borrowed of a third person the sum of $3,000 upon the joint and several note of himself and the defendant. The defendant, at the request and for the accommodation of Gilbert, signed the note as surety. And on the 25th day of July, 1888, Gilbert borrowed $3,000 of F. L. Dibble, upon the joint and several note of himself and the defendant, payable on demand, and she signed this note as surety, at the request and for the accommodation of Gilbert. All the money went into the business of Gilbert, and afterwards, and before Gilbert was adjudicated insolvent, the defendant was obliged to give, and did give, a mortgage upon her real estate, in value

greater than the notes, to secure the notes, to the City Bank and to Dibble.   The mortgages were given upon the request of Gilbert.

The defendant, at the request of the holder of the notes, and with the acquiescence of Gilbert and this plaintiff, paid on the 20th day of February, 1889, the note to F. L. Dibble, paying therefor $3,096.75; and on the 12th day of March, 1889, paid the other note, paying therefor $3,110, and now holds the notes as her property.

All of the sums so paid by the defendant are held as claims against Gilbert and his insolvent estate, after deducting the amount of the plaintiff's claim in this case.

With the exception of the note for $5,000, which became overdue and unpaid on the 13th day of November, 1888, and the note to F. L. Dibble, which was payable on demand, none of the notes herein referred to have as yet become due by their terms, but they are due and payable within a short time.

Gilbert, for more than a year before his adjudication as an insolvent debtor, was in fact insolvent, though he believed that he was solvent, and the defendant at all times prior to the adjudication believed that her uncle was perfectly solvent.   His estate is hopelessly insolvent, and only a very small dividend can be expected.

The defendant claims that to the amount of said $2,000, for the use and occupation of her real estate, the sums so received by her from Gilbert are to be applied in payment of said $2,000, and if not so applied, that then her claim should be set off against the claim of the plaintiff; and as to the balance, she claims that so much of her claim, and such amount of the sums that she has been compelled to pay, as equals the claim of the plaintiff, should be set off against the same.

The court (*Fenn, J.,*) *pro forma* overruled the claim of the defendant to any set-off beyond the $2,000 due her for rent, which amount was allowed as a set-off; and rendered judgment that the plaintiff recover the sum of $2,633.023. The defendant appealed.

*H. Stoddard* and *J. W. Bristol*, for the appellant.

Merwin v. Austin.

1. The payment of $3,850 made by the defendant as surety for Gilbert is properly a technical set-off at law under our statutes against his claim on her. Gen. Statutes, §§ 876, 877; *Norwich Printing Co.* v. *Kloppenberg*, 50 Conn., 295. The rule that the debt to be set off must be due at the commencement of the action, is a rule only of the legal tribunals and does not apply in equity. *Henry* v. *Butler*, 32 Conn., 140. And especially it does not apply to a payment by a surety to a creditor made after action brought, when the surety's liability is fixed before the action was brought. Colebrook on Collateral Securities, § 226; *Beaver* v. *Beaver*, 23 Penn. St., 167; *Thompson* v. *McClelland*, 29 id., 475; *Farmers & Mech. Bank's Appeal*, 48 id., 57; *Brittain* v. *Quiet*, 1 Jones Eq., 328; *Mattingly* v. *Sutton*, 19 W. Va., 19.

2. This right of set-off is not lost by the defendant because the suit is brought by the plaintiff as trustee in insolvency. Gen. Stat., § 1017. This statute was passed to settle the question of such a right against a trustee in insolvency after the doubt expressed in *Fitch* v. *Gates*, 39 Conn., 366. It is well settled that the trustee takes the estate subject to all equitable claims which exist against it. 2 Pomeroy's Eq., §§ 721, 724, 749; *Palmer* v. *Thayer*, 28 Conn., 237; *Gaylor* v. *Harding*, 37 id., 508; *Boston Stereotype Foundry Co.* v. *Mortimer*, 7 Pick., 168; *Marrett* v. *Equitable Insurance Co.*, 54 Maine, 537; *Donnell* v. *Portland & Ogdensburg R. R. Co.*, 76 id., 33; *Farmers' & Merchants' Bank* v. *Franklin Bank*, 31 Md., 404; *Boston & Maine R. R. Co.* v. *Oliver*, 32 N. Hamp., 172; *Strong* v. *Mitchell*, 19 Verm., 644; Drake on Attach., § 685. Where it is sought to charge a trustee in respect to specific property in his hands, and not in respect to a debt, the question is an entirely different one. Drake on Attach., § 690; *Allen* v. *Hall*, 2 Met., 263; *Mitchell* v. *Shelton*, 35 Conn., 1. The rule of natural equity governs the matter. 2 Story Eq. Jur., § 1433; *Spurr* v. *Snyder*, 35 Conn., 172; *Clarke* v. *Hawkins*, 5 R. Isl., 219; *McDonald* v. *Webster*, 2 Mass., 498; *Van Wagoner* v. *Patterson Gas Light Co.*, 3 Zabr.,

283; *Lindsay* v. *Jackson*, 2 Paige, 581; *Peters* v. *Soame*, 2 Vern., 428, *note*.

3. The insolvency of the original creditor creates a case where such a set-off in favor of a surety should be allowed, if it otherwise would not have been. Colebrook on Col. Securities, § 226; Brandt on Suretyship, § 196; Waterman on Set-off, §§ 395, 396; 1 Story Eq. Jur., § 885; *Pond* v. *Smith*, 4 Conn., 297; *Greene* v. *Darling*, 5 Mason, 201; *Smith* v. *Felton*, 43 N. York, 419; *Coffin* v. *McLean*, 80 id., 560; *Danville &c. R. R. Co.* v. *Field*, 86 Ill., 270; *McKnight* v. *Bradley*, 10 Rich. Eq., 557; *Morrow's Assignee* v. *Bright*, 20 Mo., 298; *Brewer* v. *Norcross*, 17 N. Jer. Eq., 219; *Raymond* v. *Green*, 12 Nebr., 215; *Mattingly* v. *Sutton*, 19 W. Va., 19; *Tuscumbia &c. R. R. Co.* v. *Rhodes*, 8 Ala., 206; *White* v. *Wiggins*, 32 id., 424; *Wood* v. *Steele*, 65 id., 436; *Barney* v. *Grover*, 28 Verm., 391.

4. As the defendant is a surety, she has a right to compel the principal to exonerate her and appropriate any amount due him from her in payment of the debt. Colebrook on Col. Securities, § 226; 1 Story Eq. Jur., § 327; 2 id., §§ 730, 849; Brandt on Suretyship, § 192; 3 Pomeroy Eq., § 1417, *note; Tyson* v. *Cox*, 1 Turn. & Russ., 375; *King* v. *Baldwin*, 2 Johns. Ch., 554; *Hayes* v. *Ward*, 4 id., 123; *Bishop* v. *Day*, 13 Verm., 88; *Ardesco Oil Co.* v. *Nor. Am. Oil & Mining Co.*, 66 Penn. St., 381; *Martin* v. *Reid*, 11 So. Car., 593; *Woodbridge* v. *Norris*, L. R., 6 Eq., 410. Upon her becoming surety an implied contract of indemnity arose. Brandt on Suretyship, § 177; *Ward* v. *Henry*, 5 Conn., 595; *Ely* v. *Stannard*, 46 id., 124; *Rice* v. *Southgate*, 16 Gray, 142; *Barney* v. *Grover*, 28 Verm., 391.

*J. W. Alling*, for the appellee.

On the 10th of December, 1888, Mr. Gilbert was adjudicated an insolvent. Up to that time the defendant believed him solvent, as he had believed himself to be until shortly before. At the time of his going into insolvency he had a claim against her for groceries sold her and for advances of money to the amount of $4,633. The court below allowed

her a set-off against the claim of $2,000 due her from him for rent, leaving a balance of $2,633 due him. Against this the defendant claimed the right to set off a larger sum for which she was holden upon notes indorsed or signed by her as his surety. These notes had not been paid at the time Gilbert was carried into insolvency, but have since been paid by her. The court below disallowed her claim of set-off for the money thus paid against the claim of the trustee on the $2,633. The question now is, whether the court erred, and she has a right to such set-off.

1. The intent of our insolvent laws is to establish equality among all creditors. The appropriation of this asset by the defendant towards the discharge of her obligations to third persons as surety for Gilbert offends its spirit of equality. If she succeeds, she becomes preferred to the extent of $2,633. If she had not been surety on these notes, clearly she could not have bought them after the insolvency, and applied this asset in full towards their payment. The question therefore is, whether the fact of her suretyship, and subsequent payment by reason thereof, confers upon her the right to appropriate the asset for her own use. In order to succeed she must show, not a mere sentimental equity, but a right, legal or equitable, and she is necessarily shut up to a claim of a right arising by implication or inference of law. *Munger* v. *Albany City Bank*, 85 N. York, 580. Suppose that on the 6th of December, 1888, Gilbert, then believed by all parties to be solvent, had sold this asset for a valuable consideration, could there be any equity in the claim of Miss Austin to appropriate it to her use, arising out of the subsequent discovery of Mr. Gilbert's insolvency? But on that day by operation of law all Gilbert's property was vested in a trustee for the equal benefit of all his creditors. It seems very clear that the law raises no implication by which any creditor can obtain a privilege. If there is no privilege by express contract there can be none by implication.

2. But it is said that if the law had not taken possession of Gilbert's property for the benefit of his creditors, and if

he as a hopeless insolvent had sought to collect this asset from the defendant before she had acquired, by payment of the suretyship obligation, a valid set-off, an injunction would have been granted to restrain the prosecution of the suit; and it is asked how she has lost the benefit of such a position? But we are not considering what her rights might be solely as between herself and Gilbert as an insolvent, but what her relations to his creditors were on December 6th, 1888; she then being a debtor to Gilbert, with the probability that, at some future time, she would also be his creditor. It is not always true that the creditors have no greater rights of property than the insolvent. It may be said generally that whenever the purposes of the insolvent law require it, the creditors, acting by the trustee, do have greater rights than the insolvent would have had. As against third persons the creditors may claim, as the property of the debtor, that which he could not claim. They may set aside preferences, and recover property conveyed in fraud of their rights; neither of which could the insolvent do. Now, whatever right the defendant might have against Gilbert as an insolvent plaintiff, to restrain him from collecting this asset, would be an equity purely as between herself and him; not only so, but purely between herself and Gilbert as an insolvent; that is to say, it would be only his insolvency which, solely as between him and herself, would create the equity in her favor, upon which he might be enjoined personally from doing an act which would be unjust to her only because he was an insolvent. But when his insolvency has transferred his property to his creditors, in pursuance of a law whose policy it is to treat all creditors with equality, how can it be said that it is unfair or unjust that the creditors should collect this asset, so that she, as well as they, shall be treated with entire equality? And what equity would she have to enjoin the trustee from enforcing the right of property vested in him on December 6th, 1888? *Spaulding* v. *Backus*, 122 Mass., 553.

3. But it is said that if our argument is correct a debtor to an insolvent estate could not set off against the debt a

direct claim in his favor, if it was not due at the time the creditor's title took effect in the trustee. We may concede that, with reference to set-off, all counter claims in favor of the debtor to the insolvent estate which are directly and absolutely due, though not payable, should by reason of the insolvency be regarded as payable as of the time when the creditors' title accrued in their trustee, and that such debtor should be regarded as indebted only to the amount of the balance due after deducting such counter-claims. But when it is attempted to make a rule that counter-claims may be allowed which are not in existence when the title of the creditors arises, but which thereafter may come into existence, simply because such counter-claims arise out of transactions ante-dating the insolvency, such a rule becomes impossible of general application. If the rule be adopted that the debtor to the insolvent estate may set up counter-claims only contingently in existence when the title of the trustee arose, where is the limit of such rule? Upon what principle can the time when such counter-claims shall be perfected be settled? Can it be determined by the greater or less certainty that such counter-claims will be perfected? The trustee is but an officer of the law. He can waive nothing by delay in bringing the suit. The defendant acquires no rights by reason of such delay. *Rhodes* v. *Seymour*, 36 Conn., 1. In all cases the trustee should recover according to his title when it accrued. Nothing should be a defense to that title which was not such a defense when the law created it. In *Finch* v. *Ives*, 28 Conn., 115, and in *Henry* v. *Butler*, 32 id., 140, it was decided, and such is the law to-day, that a set-off is not allowable which is not due at the time of the commencement of the suit. The statute does not confer any greater right of set-off against the assignee of a claim than would have existed against the assignor. Gen. Statutes, § 1017. The settlement of the estate of an insolvent debtor is a statutory proceeding, the object of which is to divide equally and speedily his assets among his creditors, and the indefinite extension of the rule of set-off would offend the spirit of the insolvent law both as to equality and as to an

early settlement of the estate. *First Nat. Bank* v. *Hartford Life & Annuity Co.*, 45 Conn., 22; *Nowell's Appeal from Comrs.*, 51 id., 107; *Tolles's Appeal from Comrs.*, 54 id., 521.

4. We think the decided cases sustain our position. *Demmon* v. *Boylston Bank*, 5 Cush., 194; *Aldrich* v. *Campbell*, 4 Gray, 284; *Jones* v. *Wolcott*, 15 id., 541; *Nelson* v. *Harrington*, 16 id., 139; *Spaulding* v. *Backus*, 122 Mass., 553; *Backus* v. *Spaulding*, 129 id., 234; *Howe* v. *Snow*, 3 Allen, 111; *Bradley* v. *Angel*, 3 N. York, 475; *Myers* v. *Davis*, 22 id., 489; *Martin* v. *Kunzmuller*, 37 id., 396; *Munger* v. *Albany City Bank*, 85 id., 580; *Newcomb* v. *Almy*, 96 id., 308; *Walker* v. *McKay*, 2 Met. (Ky.,) 294; *Granger's Admr.* v. *Granger*, 6 Ohio, 35; *Fuller* v. *Steiglitz*, 27 Ohio St., 355; *Ex parte Hale*, 3 Ves., 304. The cases cited in the argument in the Superior Court by the defendant, were either cases in which the question did not arise as between the creditors of the insolvent debtor and the surety, or, if they were, the claims we make were not considered. The cases of *Nichols* v. *Dayton*, 34 Conn., 65, and *Harris* v. *Taylor*, 53 id., 500, are in point as showing that a claim arising after the title of an administrator accrues can not be set off against a claim arising before that time, and that the question of the solvency or insolvency of the estate is immaterial. See also *Heirs of Stainford* v. *Hyde*, 1 Root, 397; *Parsons* v. *Root*, 41 Conn., 161; *Olmstead* v. *Scutt*, 55 id., 125.

PARDEE, J. In May, 1888, Elijah Gilbert was indebted to the City Bank of New Haven by his note for $5,000, for money loaned to and used by him. For his accommodation the defendant had signed the note as surety. On November 13th the bank notified the defendant that the note was overdue and unpaid and that it should look to her for payment. On December 5th she orally promised the bank to secure the note by a mortgage, and on December 7th duly executed and delivered it. On December 10th Elijah Gilbert was adjudicated an insolvent upon a petition filed on December 6th, and served on December 7th, and the plaintiff was duly appointed trustee of his estate in insol-

vency. On January 22d, 1889, the defendant upon the demand of the bank paid the note from her own money and now holds it as her property, as a claim against the estate of Elijah Gilbert. The estate is also indebted to her for the rent of a store to the amount of $2,000.

The plaintiff as trustee complains that the estate has a claim against the defendant for money paid for or to her from time to time during the years 1887 and 1888; for an account on book; and upon a rent account; aggregating $4,633.02; and asks for judgment. Gilbert had been insolvent during the entire year preceding the adjudication of his insolvency; but that fact was unknown both to him and to the defendant until the adjudication.

It is the claim of the defendant that so much of the sum of $4,633.02, paid to and for her by Elijah Gilbert, as is necessary to pay the amount of $2,000 due from him to her for rent, should be so applied; or, if not so applied, that she should be permitted to set off the $2,000 against the claim of the estate against her; and that she be allowed to set off such portion of the sum of $5,000 which she has been compelled to pay to the bank, as is necessary to meet the balance.

The plaintiff denies the right of set-off. The Superior Court determined that the defendant is entitled to a set-off to the extent of $2,000, the amount due from the estate to her for rent, but that she is not entitled to any set-off by reason of having paid the note for $5,000 to the City Bank. The defendant appeals from this denial of her right of set-off.

Upon November 13th the note for $5,000, owned by the bank, made by Elijah Gilbert as principal and the defendant as his surety, being due and unpaid, she stood as the sole and solvent surety for a hopelessly insolvent principal upon a matured obligation; she owed a debt to the bank, and the bank had the right to compel instant payment. No circumstance was wanting to the certainty of her obligation to pay the amount of the note for the sole benefit of the insolvent principal. He having procured her suretyship for his own accommodation upon his implied agreement to

save her harmless therefrom, it became his duty on November 13th to credit her upon his account with the amount of the note; to so state the account as that he should be her debtor for a balance. He omitting to do this, it has been continuously her right since that day to ask a court of equity to compel him to do it. And, not only so, but to compel him to make such provision for the payment of the balance as would protect her from possibility of loss. For this purpose, in equity, she became, so far forth as he was concerned, the real creditor in a matured debt and could move in compelling him to instant payment. 1 Story's Equity Jurisprudence, § 327, and cases there cited; 3 Pomeroy's Equity, note to § 1417 on p. 468; *Bishop* v. *Day*, 13 Verm., 88; *Ardesco Oil Co.* v. *Nor. Am. Oil & Mining Co.*, 66 Penn. St., 381; *Martin* v. *Reed*, 11 So. Car., 593.

And this even in the absence at that time of belief on her part that he was insolvent. That she for a long time had been and then was the sole solvent surety for a hopelessly insolvent principal, is now made certain by judicial determination; certain that she then was under an obligation to the bank, for his sole accommodation, from which there could be no release except by payment. The right to relief in equity was in her, even if she did not know it; it rests upon the existence of the fact, not upon her knowledge of it. It has been in her continuously thence to the present; she has not released it; she has not forfeited it. In her answer she moves the court to enforce it; and her motion relates back to the first moment of the existence of the right; and that was prior to the aquisition of any right by the trustee; and his right is subject to her elder and stronger equity. For, while it is true that the trustee can exercise some rights which are not in the insolvent, such as the setting aside of preferences and the recovery of property conveyed in fraud of the rights of creditors, yet as a general rule he is entitled to have and do only what the insolvent could have had and done; must take the estate with the burdens placed thereon by him, with all outstanding equities against it.

In *Parsons* v. *Root*, 41 Conn., 161, the defendant was factorized by the plaintiff as the debtor of French & Nichols: at the time of service of the factorizing process Root owed them, but he then had an unperformed contract with them upon performance of which they would be indebted to him. He subsequently performed it, and they became his debtor. This court denied him the right of set-off of any part of this indebtedness for the reason that at the time of service of the garnishee process it was uncertain whether anything would ever be due to him from French & Nichols. In effect, the court declined to make the possibility that he would complete a contract, the basis of a set-off.

There is error in the judgment complained of.

In this opinion the other judges concurred.