NORRIS S. LIPPITT ET AL., BANK COMMISSIONERS, *vs.*
THE THAMES LOAN AND TRUST COMPANY.

* First Judicial District, Hartford, January Term, 1914.

PRENTICE, C. J., RORABACK, WHEELER, BEACH AND GREENE, Js.

Unless otherwise provided by law, equity will treat all creditors alike in distributing the assets of an insolvent corporation.

General Statutes, § 3482, provides the order in which different classes of liabilities are to be paid from the avails of any bank or trust company in the hands of a receiver. Under this statute no distinction is made between depositors in the savings and in the commercial departments of such an institution, and in this respect the statute follows the general rule of law.

A charter provision to the effect that all funds and deposits entrusted to the bank should have priority of payment over all general liabilities, impresses a prior lien upon the assets of the bank for the payment of all such trusts and deposits, and is in harmony with the purpose declared in the General Statutes.

Chapter 85 of the Public Acts of 1907 provides that all deposits made in the savings department of a trust company shall be invested and held for the exclusive benefit of such depositors until their claims are paid in full. *Held* that this was not in conflict with § 3482 of the General Statutes, but furnished the savings depositors with additional protection by giving them a prior lien upon, and to the extent of, the securities purchased with such deposits, leaving any unpaid balance upon their claims to share with all other depositors.

A certificate of deposit issued by a savings department of a trust company creates the relation of debtor and creditor between it and the depositor.

A depositor in a savings department of a trust company cannot, upon its insolvency, set off the amount of such deposit against an indebtedness due from him to the company for money loaned by that department; for if this was permitted the rule of equality between depositors might be destroyed. Nor can a depositor in the commercial department set off the amount of such deposit against a debt due from him to the savings department for money loaned.

A depositor in the commercial department may set off the amount of his deposit therein, against a debt due from him to that department for money loaned.

Mutual debts contracted before the insolvency of one of the parties,

* Transferred from second judicial district.

may be set-off; but this will not be permitted if it would destroy the order or equality of distribution provided by statute.

A borrower from the commercial department may set off, against his debt to that department, the amount of his deposit in the savings department; and his right to do so is not impaired by the fact that he put up collateral security for his loan and is of financial responsibility apart from the value of his collateral.

A charter authorizing a loan and trust company to conduct a savings department does not make that department a separate and independent institution.

Under our statute relating to set-off (General Statutes, § 649) "mutual debts" are cross debts due to and from persons in the same capacity and of the same kind and quality. Accordingly, a debt due from an insolvent corporation to one partner cannot be set off against a joint indebtedness of the partnership to the insolvent, but the set-off is allowable if the partnership indebtedness be several as well as joint, since the several liability would render the debts mutual within the meaning of that term in our present statute.

An indorser upon a note to a bank which afterward becomes insolvent may set off his deposit in the insolvent bank against his liability as indorser, provided the maker is unable to pay and he himself has not been indemnified against loss; but otherwise the set-off is not permitted.

The relation existing between a forwarding and a collecting bank is ordinarily that of principal and agent, but where the parties intend that the amount of the notes collected shall be credited to the forwarding bank and remitted to it at stated intervals, meanwhile becoming part of the general funds of the collecting bank, the original relation of principal and agent is transformed, after collection, into that of debtor and creditor.

In the present case a New York bank forwarded three notes to the Thames Loan and Trust Company "for collection and remittance." A printed instruction on the letter accompanying the notes requested the collecting bank not to credit until paid. The Trust Company received the notes in due course and collected two on April 15th, the day before it was enjoined from transacting further business, and one on April 25th. *Held* that with respect to the notes first collected it did not appear from the facts stipulated in the record that the parties intended that the sums collected should be a trust fund, or should be remitted forthwith; but with respect to the third note, which was collected after the Trust Company was restrained from transacting business, the relationship of principal and agent existed between the parties and the avails of such note were impressed with a trust in favor of the forwarding bank.

The authority of a bank to collect notes sent to it for that purpose,

Lippitt *v.* Thames Loan & Trust Co.

ceases upon its insolvency; and if it does collect the notes thereafter, the proceeds become impressed with a trust in favor of the owner or owners of the notes.

One whose claim rests upon a trust relation assumes the burden of proving its existence.

Judicial notice may be taken of the prevailing custom among banks to credit items collected for another bank and to mingle the sums so collected with the funds of the collecting bank.

Where the relation between the forwarding and the collecting bank is merely that of debtor and creditor, there may be a set off of cross claims; but where the forwarding bank is entitled to the avails of the collection as a trust fund, the collecting bank cannot set off against such claim a debt due to it from the forwarding bank.

Interest on claims against an insolvent estate cannot be allowed after the date upon which insolvency has been officially declared, or other action equivalent thereto has been taken.

Claims which by contract or law are entitled to interest, bear interest to the date of the adjudication of insolvency.

If the assets of a corporation in the hands of a receiver prove sufficient to more than pay the claims and expenses allowed against it, and also its stockholders, interest should be allowed, ratably in the surplus, upon the claims as due at the date of the receiver's appointment or other action of court equivalent thereto.

Savings-bank deposits are not entitled to dividends until they are declared.

Argued January 7th—decided April 28th, 1914.

APPLICATION by a receiver of the defendant company for advice in the discharge of his official duties, and especially as to the validity of claims of set-off made by certain debtors who were also depositors in one or more of the banking departments conducted by the defendant company, brought to and reserved by the Superior Court in New London County, *Greene, J.,* upon an agreed finding of facts, for the consideration and advice of this court.

On April 16th, 1913, the *Hon. William H. Williams,* a judge of the Superior Court, made an order pursuant to General Statutes, § 3460, restraining the Thames Loan and Trust Company, for a period of three months, from paying out funds or deposits and from declaring or

paying dividends on its deposits or capital stock. On June 27th the court appointed Hon. Charles F. Thayer receiver of the company, and on July 1st he qualified.

The Thames Company was chartered in Connecticut in 1869, and since 1903 has done, in Norwich, a general banking and trust company business, taking general and special deposits, and has also conducted a savings department in which it had three classes of savings depositors, called a savings department, a home department, and a school savings system.

Its commercial deposits were evidenced by pass-books and certificates of deposit; and its savings department deposits by pass-books. All of the business was conducted in the same rooms and by the same persons, and all moneys were paid in and out over the same counter and by the same clerks, and when paid in the moneys were mingled in the same till or drawer. Moneys received in the commercial department were entered in separate books, and, so far as the bookkeeping was concerned, kept separate from the savings deposits. Moneys received from the depositors in the three classes of the savings department were entered in separate books, and an account kept with each depositor. On April 16th, 1913, the credit balance in the savings department was $589,536.59, and the company had set aside for the savings depositors assets aggregating $508,500.93. The balance, $81,035.66, was uninvested and in the general fund. The appraisal value of these is $399,225.43. The appraisal value of all other assets is $322,972.39. The total liabilities are $884,185.38.

The questions on which advice is asked, together with the special facts relating to them, are sufficiently stated in the opinion.

*Charles F. Thayer* and *Charles V. James,* for the receiver.

*Amos A. Browning,* with whom was *Virtume P. A. Quinn,* for Mary L. Avery *et als.,* depositors in savings department.

*Thomas M. Shields,* for Jacob Gordon and Irving L. Gardner.

*Lucius Brown,* for William H. Doane, Emma A. Warner, Frances Tibbetts *et als.*

*Joseph T. Fanning,* for the City of Norwich *et als.,* depositors in the savings department.

*Ralph Royall,* for the National Reserve Bank of New York City.

WHEELER, J.  The application of the receiver, joined in by a number of the parties in interest, asks the advice of the court upon many questions arising in the course of the receivership.  Those which we will discuss first concern the relation of the Thames Company to its various classes of depositors, and the relation of these classes of depositors to each other.  Among the questions upon which our advice is sought are these: Are the savings department depositors entitled to be paid out of the assets "set aside for savings depositors," and, if these prove insufficient, are they entitled, as to the balance, to share in the other assets?  And is the said sum of $81,035.66 to be included in the investments set aside for savings depositors?

Upon insolvency of a corporation a court of equity will, unless the rules of law or statute law forbid, place all creditors upon an equality.  Certain priorities are generally recognized in the distribution of the avails of the insolvent estate.  The expenses of administration are first paid, and all taxes have priority of payment.

Frequently the order of payment of creditors is prescribed by statute, in whole or in part. Our statute so prescribes, in the case of a bank or trust company in the hands of a receiver.

General Statutes, § 3482, provides: "The avails of the property of any bank or trust company in the hands of a receiver or receivers shall be appropriated ratably to the payment of: (1) the charges and expenses of settling its affairs; (2) the circulating notes, if any; (3) all deposits; (4) all sums which have been subscribed and paid in for its stock by the State or the school fund; (5) all other liabilities; and the surplus shall be distributed among the stockholders."

This statute has been in force since 1837, long prior to the granting of the charter to the Thames Company. Under it all deposits of a trust company, whether in a savings or a commercial department, are to be treated alike and payable from the avails after payment of the charges and expenses of settling the receivership (including taxes) and of any outstanding circulating notes. Savings deposits and commercial deposits are referred to as deposits in the statutes in force at and prior to the granting of its charter to the Thames Company. Our statute, in treating all depositors alike, whether savings or commercial, appears to have followed the general rule of the law. *People* v. *Mechanics & Traders Sav. Inst.*, 92 N. Y. 7; *First Nat. Bank* v. *Armstrong*, 39 Fed. Rep. 231; Gluck & Becker on Receivers of Corporations (2d Ed.) 339, 340.

Unless repealed or modified by the charter of the Thames Company or by subsequent statute, § 3482 provides the method of distribution of the avails of the company in the hands of the receiver.

The charter authorizes the company to accept and execute all trusts and receive money on commercial or savings deposits. Section 5 provides: "All the capital

stock, property and estate of every kind belonging to said company shall be and stand charged with the fulfillment of said trusts, and the payment of said deposits, and said trusts and other funds, as the first, and prior lien thereon, in case of the failure of said corporation." 6 Special Laws, p. 593. In terms the section impresses a prior lien upon all the assets of the company for the payment of all trusts and deposits with it. The relation of debtor and creditor entered into between the depositors and the company was additionally protected by the preference accorded deposits in the assets. In the event of failure, their prior lien was to be satisfied ahead of the general liabilities of the company.

General Statutes, § 3482, should be construed in connection with § 5 of the charter. Both effect the same purpose, to give all deposits and funds entrusted to the company priority of payment over all general liabilities. The expenses of administration are in any event a first charge. So that only one class of creditors, holders of circulating notes, are placed by the statute ahead of depositors who, if the charter stood alone, might perhaps be held subordinate to depositors. As there is no contest in this case between holders of circulating notes and depositors, we need not determine which would be entitled to priority as against this company. Certain it is there is no suggestion in the charter that other parts of this statute are affected by the charter; so that claims against the estate must be marshalled in accordance with its terms. So far as concerns the questions submitted to us, there is no inconsistency between the charter and § 3482. Both may and should be given complete effect.

All classes of deposits, in the distribution of the avails in the hands of the receiver, would have shared ratably had not the distribution been affected by the

Public Acts of 1907, p. 646, chapter 85, § 1, which provides: "All banks and trust companies maintaining a savings department, or soliciting or receiving deposits as savings, shall invest all such deposits hereafter so received according to the requirements of the statute laws of this State concerning the investment of deposits in savings banks; and said investments shall be for the exclusive protection of the depositors in said savings department and shall not be liable for or used to pay any other obligation or liability of said bank or trust company until after the payment of all of the deposits in said savings department." Obviously this provision was intended to safeguard the savings department deposits of a bank or trust company by requiring: (1) that the investment of all such deposits shall be in the investments by law permitted deposits in savings-banks; (2) that the investments of such deposits shall be for the exclusive protection of the depositors in the savings department; and (3) that these investments shall be used to pay the savings department deposits before they can be used to pay any other liability of the bank or trust company. The purpose of the statute was to add to the protection of the savings department depositor and not to diminish that which he already had. He had, by the charter, a prior lien upon all of the assets of the company. He had the right to share ratably in the avails in the hands of the receiver in a certain order. Neither privilege was taken from him by this statute. Another protectory privilege was added to these. If the investments in the savings department should not suffice to pay the savings department depositor in full, the unpaid balance of his deposit was placed on a parity with all other deposits, and entitled, on distribution, to share ratably in the order prescribed by § 3482. The certificate of deposit creates the relation of debtor and creditor between him

and the Thames Company. His deposit stood in precisely the position of other deposits in its right to share in the distribution of the avails.

It follows from what we have said that all depositors in the several savings departments are on a parity; that the said assets "set aside for savings depositors" are to be applied to the payment ratably of all deposits in the several savings departments after paying the expenses of administration and taxes; that the avails remaining in the hands of the receiver are to be appropriated ratably to the payment of the balance of the savings department deposits and all other deposits; that the balance, if any, is to be distributed in accordance with § 3482; that the $81,035.66 is to be included with the commercial deposits, and is not to be treated as included in "investments set aside for savings depositors"; and that the Doane certificates of deposit are to be included among the commercial deposits.

Let us now take up the many questions relating to set-offs. The Thames Company, in its savings department, was in reality operating a savings-bank. The depositors in this department were the equitable owners of the savings assets set apart in this department, and had made the company their agent to receive, care for, and invest their moneys. Each depositor had an equal right to his proportional share of all the funds of this department. Any debt he owed to the department was owed to all of its depositors. Upon dissolution or insolvency he was entitled to share in its assets ratably with other depositors. If a depositor who was a borrower could set off his deposit at its face value against his debt, he might secure full payment of his deposit and a greater share of the assets than his fellow depositors. This would destroy the rule of equality, and give a greater share of the assets to the borrowing than to the nonborrowing depositor. For

these reasons we have held that the depositor in a savings-bank, on the insolvency of the bank, cannot set off his deposit against his debt. *Osborn* v. *Byrne,* 43 Conn. 155, 159.

The same rule must hold in the case of borrowers from the savings department of the Thames Company. The deposits of Case and of Mrs. Turner in the savings department cannot be set off against their loans from it. Nor is the situation changed and the rule of equality to be departed from, because the borrower in the savings department holds a deposit in the commercial department. If the commercial depositor may set off his deposit against his loan from the savings department, this may diminish the assets of that department and give this borrower a larger share than other depositors. The commercial deposits of Gordon and of Mrs. Turner cannot be set off against their loans from the savings department. The deposit of Mrs. Turner, as guardian of her minor son, in the home department, is a savings department deposit, and it cannot be set off against her own loan from that department because set-off is not applicable to savings deposits, and, further, the debt owed by Mrs. Turner is owed in a different relation from that owed by the savings department to her as guardian. She could not, for the reasons stated, set off the deposits now belonging to her husband's estate in the commercial or savings departments against her debt due the savings department. And, further, her husband's estate has not yet been administered, and, so far as appears, she does not own either of these deposits.

The commercial department borrower, unlike the savings department borrower, may set off his claim against the commercial department, whether it be in the form of a deposit or otherwise. This follows from the relationship of the receiver to the company. The receiver is a mere trustee for the creditors, and takes the

property subject to all the claims and defenses that were available against the company before its insolvency. Mutual debts contracted in ordinary course of business before the insolvency may be set off. The balance only is an asset of the insolvent. *Carroll* v. *Weaver*, 65 Conn. 76, 81, 31 Atl. 489; *Scott* v. *Armstrong*, 146 U. S. 499, 13 Sup. Ct. Rep. 148; *Merwin* v. *Austin*, 58 Conn. 22, 18 Atl. 1029; High on Receivers (4th Ed.) § 247; note to 23 L. R. A. 313. To this general rule there are certain limitations which do not concern us in this case. One of these is that set-off cannot be allowed when it will destroy the order or equality of distribution of the insolvent estate provided by statute.

Against the nine notes, upon some or all of which the Norwich Overall and Shirt Company, Davidson, Rosenberg, Jacob Gordon, and David Gordon are makers, may be set off, pro rata, the deposit in the commercial department of the Norwich Overall and Shirt Company. Gordon has the right to set off his deposit in the commercial department against his loans of $700 and $300. The estate of Turner may set off the deposit of Turner in the commercial department against his loan of $2,000 from it.

We are also asked whether the borrower from the commercial department may set off against his loan his deposit in the savings department. At the beginning of the opinion we adopted the view that the savings depositor is a creditor of the company for the whole of his deposit, and that he is additionally protected by the statute which provides that the investments of the savings department shall be first used to pay savings depositors. These conclusions might suggest a result that the depositor in the savings department should first exhaust his deposit and then set off merely the balance remaining due him against his debt to the commercial department. But the only practicable

and workable rule compels the set off of the savings deposit against the loan from the commercial department. Such a rule may benefit the savings depositor by increasing his proportion in the savings assets although diminishing his dividend from the assets of the commercial department. Likewise it may benefit this borrower and deplete the assets of the commercial department. But this result to the borrower and to the commercial department is what will happen where the deposit of a borrower in the commercial department is set off against his loan. If the rule should be adopted that the set-off allowed should only be the amount of the balance due after receipt of the dividend from the savings department, the company could not collect such loans until all the savings investments were liquidated and paid over. This would prejudice the borrower, as the interest upon his loan would continue. And it would delay the settlement of the estate, add to the administration and accounting burdens of the receiver, and, by deferring the payment of dividends to the depositors, in all likelihood lose the gain to them from the adoption of this rule in place of that adopted by us. The rule we adopt is far simpler and better adapted to. the purposes of business. The simpler the rules of law affecting business relations can be made the better for business.

We can see no adequate reason for creating out of this situation an exception to the ordinary rule permitting the set-off, unless it be held that the savings department and the commercial department were in fact separate and independent institutions. In some respects the relation between these depositors is not unlike that of depositors in separate institutions. The law required the funds from the savings department to be kept separate, and invested in investments required by law for savings-bank deposits, and required the

company to pay the same tax as paid by savings-banks, but did not require it to maintain the same statutory reserve as they were required to. In other features fundamental differences appear. The trustees, and not the depositors, control and manage the savings department fund. We have seen that under the charter the savings depositors may, if the assets set apart in the savings department are not sufficient to pay their deposits, share, as to the balance, with the commercial depositors. If these departments constituted separate institutions, the savings depositors would be confined to the assets of their own department. We do not think the charter creates, or the law providing for the setting apart of savings funds and investing them in savings bank investments intended to make of these departments, independent institutions. The savings deposits of Case, Gardner, and Mrs. Turner can be set off against their loans in the commercial department. We are unable to discover any reason for denying this set-off to Case, in the fact that with his savings book he deposited two orders as collateral security at the time of his loans; *McKinnon* v. *Armstrong Bros. & Co.*, L. R. 2 App. Cas. 531; 3 Randolph on Commercial Paper, § 1865; nor in the fact that he is of financial responsibility apart from the value of this collateral.

The savings deposit of Mrs. Turner cannot be set off against the loan of Mr. Turner in the commercial department; they are in different relation. Mrs. Turner is not as yet in legal possession of any part of the estate of Mr. Turner. The conveyance of Mr. Turner to her "subject to said mortgage" carried no personal liability. *Hubbard* v. *Ensign*, 46 Conn. 576.

There are two deposits in the commercial department, one of Rosenberg and one of Davidson, and a deposit of Rosenberg in the savings department. We

are asked whether any or all of these deposits may be
set off against demands upon negotiable notes made to
"ourselves" by the Norwich Overall and Shirt Com-
pany, a partnership composed of said Rosenberg and
Davidson, and by said Rosenberg and Davidson.
Both classes of deposits, commercial and savings, as we
have pointed out, may be set off against a debt due the
commercial department, provided the debts are mutual.
Our inquiry narrows to this: In an action by the
receiver of an insolvent corporation against a partner-
ship upon its negotiable note, can one of the partners
set off his individual debt due from the insolvent
against the debt of the partnership due to the insolvent?
The weight of authority supports the conclusion that as
a general rule in such an action the individual debt due
one partner cannot be set off against a debt due from
the partnership. The decisions are controlled by the
statutes of their jurisdiction. With us, too, set-off is
regulated by statute. Under our earliest statute, 1820,
the debt due one partner could not be set off against the
joint debt due from the partnership. The parties were
not identical, a then essential of mutuality. JUDGE
LOOMIS, in *Meeker* v. *Thompson*, 43 Conn. 77, has
summarized the statutory changes from 1820 through
the Revision of 1875. He shows that the amendatory
statute passed in 1843 permitted a set-off by any of the
defendants of the debt due him from the plaintiff
against the debt sued on by the plaintiff, and that this
statute was broadened by the language used in the
Revision of 1875, and that these changes had had the
effect somewhat to limit the scope of the word "mutual"
in our statute. That part of our statute which im-
mediately concerns us is identical with the language
used in the Revision of 1875. "In all actions brought
for the recovery of a debt, if there shall be mutual debts
between the plaintiff or plaintiffs, or either of them, and

the defendant or defendants, or either of them, one debt may be set off against the other." General Statutes (1902) § 649. Based upon the right of set-off under the statute of 1820, we, in *Pitkin* v. *Pitkin*, 8 Conn. 325, 328, defined mutual debts: "To constitute mutuality, the debts must be due to and from the same persons in the same capacity." And in *Palmer* v. *Green*, 6 Conn. 14, 19, we held that mutual debts "must exist between the parties in their own right, and be of the same kind and quality, clearly ascertained and liquidated." The effect of the statutory change as to parties, first made in 1843, was that the debt set off need no longer be due to all the defendants, but might be due to any of them. *Snyder* v. *Spurr*, 33 Conn. 407. While the statutory changes have eliminated one of the fundamental essentials of the term "mutual" in the set-off statute, viz., the necessity for the identity of the parties, and thus lessened its scope, they have not done away with its other essentials. Mutual debts, under our present statute, are cross debts in the same capacity and right and of the same kind and quality. And so we have held, since these statutes were in force, that a defendant could not set off his debt from the plaintiff and another against his debt due the plaintiff. *Snyder* v. *Spurr*, *supra*. We have also held, in an action by copartners, that the defendant could not set off his individual debt against one of the partners. *Meeker* v. *Thompson*, 43 Conn. 77. The debts due Rosenberg and Davidson from the commercial and savings departments are their own individual debts; the debts due from Rosenberg and Davidson may be their joint debts or their joint and several debts. If the notes of Rosenberg and Davidson be joint, the cross debts would not be in the same right or kind, and so not mutual. If the debts be joint and several, they would be of the same kind and right, for each defendant is severally liable,

and hence the cross debts would be mutual. *Sledge* v. *Swift, Murphy & Co.*, 53 Ala. 110; *Dunn* v. *West & Hackley*, 44 Ky. (5 B. Mon.) 376, 383; Pomeroy, Remedies & Remedial Rights, § 761; 34 Cyc. 728; note to *Gregg* v. *James*, 12 Amer. Dec. 156 (Ill., Breese, 143), and cases cited. Since neither copies of these notes, nor such summary of their contents as would enable us to determine whether the notes were joint, or joint and several, are in the record, we are not able to advise definitely as to this question of off-set concerning them.

We are not unmindful that with various courts certain apparent exceptions to the general rule that mutuality is essential to the validity of a set-off have been recognized. *Spinney* v. *Hall*, 49 Ind. App. 502, 507, 97 N. E. 571. None of the facts upon which such exceptions have been predicated appear of record, and hence we have not considered them.

Worthington, an indorser upon his wife's note, held by the commercial department, is a depositor in that department, and the receiver asks if this deposit can be set off against his liability on the note. An indorser upon a note before insolvency may, after insolvency, set off his deposit in a bank against the bank's demand upon him under his indorsement of the note, provided the maker of the note is not able to pay and the indorser has not been indemnified against loss. *In re Middle District Bank*, 9 Cow. (N. Y.) 414 note; 1 Morse on Banks & Banking (3d Ed.) § 338; *Yardley* v. *Clothier*, 49 Fed. Rep. 337. Lord Blackburn, in *McKinnon* v. *Armstrong Bros. & Co.*, L. R. 2 App. Cas. 531, held that in England it had been decided for many years that if an indorser of a bill became a party to the bill before the bankruptcy, he might set it off on becoming holder afterward. The maker of this note was able to pay, and therefore Worthington cannot have a set-off. This rule would seem to be based upon sound reason. The

indorser cannot lose if the maker be solvent; while, if the set-off be allowed, the estate of the insolvent may be diminished for the sole benefit of the debtor. He will thus, in all probability, by arrangement with the indorser, pay less of his debt than any other debtor, or the indorser would get a larger percentage of his deposit than other depositors. This result would be highly inequitable.

Other questions relate to items sent the Thames Company for collection by a New York bank. On April 7th, 1913, the National Reserve Bank of New York sent the Thames Company, "for collection and remittance," items of $523.29 and $647.84. The second of these items was collected and credited to the bank on April 15th, 1913, and the first on April 25th, 1913. The Thames Company was restrained by order of court from paying out moneys on April 16th, 1913, and the receiver appointed on June 27th, and qualified on July 1st, 1913. Upon the letter accompanying these items, and beneath the signature, appeared the following: "For collection only. Please do not credit until paid." On April 14th, 1913, the Reserve Bank sent the Thames Company, "for collection and remittance," an item of $27.15, which was collected and credited the bank on the next day. All three items were collected and credited the bank on collection account, but no moneys were set apart for their payment. The bank at the time of the collections was indebted to the Thames Company in the sum of $294.30, on general account.

There was an agreement between the bank and the Thames Company that the bank should pay the company a fee for collecting items. The bank was the agent to collect these items for the owners; it has since paid their face value, which amounts have never been repaid it. The bank claims that these items so collected constitute a trust fund for it, and as to them it is a

preferred creditor and entitled to immediate payment. An adjudication of these questions is asked, and also as to whether the Thames Company can set off the $294.30 due it on general account against the sum due the bank, if this be found to be a trust fund.

The indorsement of these items "for collection and remittance" was a restrictive indorsement. *Freeman's National Bank* v. *National Tube Works Co.*, 151 Mass. 413, 418, 24 N. E. 779. It created, between the sending and receiving bank, the relation of principal and agent. So long as the items remained uncollected, the principal could control their disposition. The agent had received the items for a specific purpose, and stood toward its principal as a trustee charged with an active duty toward the purpose of the agency, which was the subject of the trust. *Dale* v. *Gear*, 38 Conn. 15, 18. After the collections were made, the agent or trustee might have continued the trust relation, or, by its conduct toward the collections, have changed the relation to that of debtor and creditor. For example, the agent would change the relation to that of debtor and creditor were it to mingle the funds collected with its own funds, and credit the collections to the sending bank under its arrangement with it to make remittances at specified times. If, on the other hand, it held the funds collected, intending under its agreement to make immediate remittance, and for a very brief period, for business convenience, keeping the funds set apart or on special deposit for its principal, there would be no change in the relation, the trust would continue, and, on failure of the agent pending transmission of the funds, the principal would be entitled to them. *Commercial Bank* v. *Armstrong*, 148 U. S. 50, 56, 13 Sup. Ct. Rep. 533.

Some of the courts hold the test is found in the ability to trace the fund; if this can be done the trust continues;

if it cannot, the trust ceases, and the principal must share with other creditors of the insolvent. While other courts hold the test to be whether the relation of principal and agent has ceased and that of debtor and creditor begun. We agree with the Supreme Court of the United States (*Commercial Bank* v. *Armstrong*, 148 U. S. 50, 13 Sup. Ct. Rep. 533) that the latter test furnishes the more satisfactory reason. Whether or not the fund can be traced is, as it seems to us, evidence of the existence or non-existence of this relation.

But whatever the ground of recovery adopted, the claimant to the fund must assume the burden of proving the existence of this trust relation. *Bank Commissioners* v. *Security Trust Co.*, 70 N. H. 536, 550, 49 Atl. 113. The insolvency of the Thames Company terminated its authority to collect. The receiver of the company could not inventory uncollected items, for they never became part of the assets of the company. If the company collected in spite of the termination of its agency to collect, it held the proceeds as an agent for the sending bank, and they became impressed with a trust from which they cannot be disassociated. *Freeman's National Bank* v. *National Tube Works Co.*, 151 Mass. 413, 418, 24 N. E. 779; *Manufacturers' National Bank* v. *Continental Bank*, 148 Mass. 553, 559, 20 N. E. 193; 5 Cyc. 512. The order of court of April 16th restrained the Thames Company from paying out any of its funds, or declaring or paying dividends on its deposits or capital stock. The order did not in terms purport to prevent the company from making collections of items in its hands. But when the power of the company to remit the proceeds of its collections was taken from it, its power to fulfil the purposes of the agency committed to it by the Reserve Bank was taken away. The bank would not have authorized the collection had it known that the proceeds could not be remitted to it. It would

not have converted a practically cash asset into a general claim against the company. When the company lost its power to carry out the terms of its agency, the agency ceased. The claim collected after the order of court of April 16th is in the same position as the claim collected after an adjudication in insolvency. The proceeds are impressed with a trust; the relation of principal and agent has never been transformed to that of debtor and creditor.

As to the two items collected before the order was passed, the facts stipulated do not indicate that the bank intended that the sums collected on these items should be a trust fund, or be forthwith remitted to it. The letter of April 7th, forwarded with the two largest items, did state that the enclosure was "for collection and remittance." There is nothing in the facts presented, and no legal inference to be drawn from the use of these words, which compel the conclusion that immediate remittance was intended. The letter also  said: "Please do not credit until paid." This undoubtedly had reference to the custom between banks holding business relations to credit items unless otherwise directed; and it implied that credit might be made upon collection. We think the custom of the banking business is so universal that we may take judicial notice of it, that items collected for another bank are in fact credited, whether the provision "for collection and remittance" be among the printed directions of the letter of the forwarding bank to its correspondent or not. We must presume that by a well-known custom among banks, moneys of its correspondents, when collected, are mingled with the funds of the collecting bank. *Freeman's National Bank* v. *National Tube Works Co.*, 151 Mass. 413, 418, 24 N. E. 779. When this is done, the forwarding bank will get a like sum of money, but not the specific fund collected. If the

payment of a fee for the collection indicates, as the Reserve Bank asserts, a custom that immediate remittance of the items collected should be made, we could not so hold without a finding of the custom. Until the case is presented of such custom, it will not be necessary to consider the effect of the violation of its contract by the agent by crediting the collections made.

We should have preferred that the record should show more fully all of the facts surrounding this transaction: the relation and course of business between the Reserve Bank and the Thames Company; their mutual custom in making collections; all of their communications with each other; their intention to impress these items with a trust or otherwise; and the customs of banks in similar transactions. Upon the case as presented by this record, we are of opinion that the Reserve Bank, as to these two items, is a general creditor of the Thames Company, and that the proceeds of these items are not impressed with a trust. Against these items the Reserve Bank is entitled to set off the $294.30 due from it to the Thames Company.

Against the $523.29 item, impressed as it is with a trust, the amount due the receiver from the Reserve Bank cannot be set off, since these are neither mutual credits nor mutual debts. The Thames Company held the amount due the Reserve Bank as trustee, while the bank owed the Thames Company in its corporate capacity. *Libby* v. *Hopkins*, 104 U. S. 303, 309; General Statutes, § 649.

The receiver also submits for decision the questions whether interest shall be computed upon the deposits in the several savings departments, and upon the deposits, general and special, in the commercial department, and if so, at what rate and to what date. Some of the savings department depositors claim interest at the rate of four per cent up to the date of order of court

(April 16th), while others claim interest at the rate of four per cent up to the date of appointment of the receiver.

No debt can arise against an insolvent estate in the hands of a receiver. From this principle comes the general rule that only claims as then existing can be recognized as obligations of the estate. For this reason interest cannot be allowed on claims after the insolvency has been judicially declared, or—what is its equivalent—a receiver has been appointed pursuant to General Statutes, § 3461. *Thomas* v. *Western Car Co.*, 149 U. S. 95, 116, 13 Sup. Ct. Rep. 824; *White* v. *Knox*, 111 U. S. 784, 4 Sup. Ct. Rep. 686; *Bank Commissioners* v. *Security Trust Co.*, 70 N. H. 536, 538, 49 Atl. 113. A similar result followed the order of the court of April 16th, 1913, made under authority of the Public Acts of 1913, p. 1806, chapter 187, § 10, restraining the Thames Company "from paying its deposits or any part thereof and from declaring or paying any dividends on its deposits," when such order was later followed by the appointment of a receiver on June 27th, 1913.

Claims which by contract carry interest, or those which carry interest as legal damages for a debt already due, draw interest up to the adjudication of insolvency, or the appointment of the receiver, or an order of court made, as in this case, restraining the Thames Company from paying any dividend. *In the Matter of Murray*, 6 Paige (N. Y.) 204; 22 Cyc. 1316.

If the insolvent estate prove sufficient to more than pay the claims and expenses as against the company, its shareholders and stockholders, interest should be allowed upon the claims as due at the date of adjudication in insolvency, or the appointment of a receiver, or the making of such order of court, ratably in the surplus. As against the insolvent estate, interest is calculated to the date of adjudication of insolvency,

or the appointment of a receiver, or the making of such order; as against the insolvent company and the shareholders and stockholders, the claims carry interest upon the amount then found due. *Richmond* v. *Irons*, 121 U. S. 27, 64, 7 Sup. Ct. Rep. 788; *White* v. *Knox*, 111 U. S. 784, 4 Sup. Ct. Rep. 686; *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. Rep. 372, 379; *New York Security & Trust Co.* v. *Lombard Inv. Co.*, 73 Fed. Rep. 537, 554. This is the rule of our statute (General Statutes, § 342) when the insolvent estate proves solvent; and it was the rule adopted in *Green* v. *Abbot*, 2 Root, 242.

Applying the principles to the questions submitted, it follows: 1. Any depositor of the commercial department, whether general or special, or in any of the savings departments, whose deposit, by his contract with the Thames Company, bears interest, may have interest at his contract rate upon his deposit to the date of the order of court, April 16th, 1913. 2. Savings-bank depositors, as a rule, are not entitled to dividends on their deposits until declared. As we understand the facts of this case, the several savings department depositors have not made their deposits upon a special contract to pay them a stated rate of interest. If our understanding be correct, the savings department depositors are not entitled to interest or to dividends upon their deposits beyond the last declaration of dividend. Their claims are to be allowed in the amount due at the time of the order of court of April 16th, 1913.

Neither the receiver of the Atlantic National Bank, nor the finance committee of the Thames Loan and Trust Company, nor the trustees of said company, nor the claimants of uncollected dividends, are represented, and none of them will be bound by the judgment herein. These questions have not been argued before us, the receiver takes no position in regard to any

question submitted, but merely submits certain authorities thereon. As the decision of these questions will affect the body of the estate, we are of the opinion that the receiver should take such position as in his best judgment will best protect his estate. We therefore refrain from expressing any opinion, or advising the receiver, in reference to the several matters affecting the interests of these unrepresented parties.

The Superior Court is advised to render its judgment of advice in conformity with the conclusions herein expressed.

n this opinion the other judges concurred.