## In re Lancaster Trust Company

*Harris C. Arnold* and *John A. Coyle*, for exceptant; *John N. Hetrick*, contra.

ATLEE, P. J., July 25, 1933.—The facts are found to be as follows:

The claimant, Schock Independent Oil Company, was the indorser on a note of $40,000, given by Crane Hook Oil Storage Company. In addition to the

indorsement of the claimant, the note bore the indorsement of Clarence Schock. Claimant had on deposit in Lancaster Trust Company, on January 12, 1932, the sum of $35,609.27, which amount the claimant requested be applied as an offset to the note upon which claimant was an indorser. The claimant's balance of $35,609.27 has been set aside in a reserve for future offsets. The objection noted by the Secretary of Banking to this claim, as appears on page 2479 of his account, is as follows:

"The offset has not been allowed for the reason that it has not been determined that the maker of the note is insolvent. Until the assets of the maker have been exhausted, accountant objects to the allowance of the offset, as requested by the claimant."

Clarence Schock testified that he was the president of Schock Independent Oil Company, and also of Crane Hook Oil Storage Company, and that, on December 31, 1931, the financial condition of Crane Hook Oil Storage Company was such that it had a deficit in net working capital of $58,271. He further testified that on December 31, 1932, its deficiency in net working capital was $16,113.42, and that on January 31, 1932, the deficiency was $48,019.69. It appears that Crane Hook Oil Storage Company is a Delaware corporation, having no assets in Pennsylvania.

Prior to December 29, 1930, on the credit of Schock Independent Oil Company and Clarence Schock, the Lancaster Trust Company loaned these parties money. On that date, Schock Independent Oil Company, by Clarence Schock, wrote the following letter to the Lancaster Trust Company:

"Mr. John L. Ruth, President, The Lancaster Trust Company, Lancaster, Pa. Dear Mr. Ruth: In accordance with the arrangement made with you some time ago, we hereby request that you cancel the two notes of Schock Independent Oil Co., one for $25,000, due January 25, 1931, and one for $50,000, due February 25, 1931, and receive in exchange therefor notes for the same amount and same due dates with Crane Hook Oil Storage Co. as maker and Schock Independent Oil Co. and Clarence Schock as indorser. We enclose the new notes herewith and trust that this change can be made without annoyance to your accounting department. As explained to you, it will make the bookkeeping between the Schock Independent Oil Co. and the Crane Hook Oil Storage Co. much more satisfactory if this obligation is changed in this manner, and so far as the risk is concerned the responsibility remains the same. Yours truly, Schock Independent Oil Co., by Clarence Schock."

According to the testimony of Mr. Schock, the change in the setup of the notes was made in accordance with the terms of the foregoing letter. Mr. Schock further testified that the instant note could not be collected from Crane Hook Oil Storage Company.

According to the financial statements submitted and offered in evidence, Crane Hook Oil Storage Company has a deficiency in working capital, but it exhibits a net worth over and above the amount of its liabilities.

While the capital of Crane Hook Oil Storage Company may be impaired, its insolvency has not been proven to the satisfaction of the court.

The court therefore finds as a fact that Crane Hook Oil Storage Company is solvent.

### Discussion

According to the contention of counsel for the Secretary of Banking of the Commonwealth of Pennsylvania, in possession of the business and property of Lancaster Trust Company, the testimony in this case shows that Crane Hook Oil Storage Company is solvent; that the books showed a net worth on Decem-

ber 31, 1931, of $318,667.33; that they showed a net worth on December 31, 1932, of $317,282.75; and that they further showed a net worth on January 31, 1933, of $316,954.96. In the light of these statements, which were duly offered in evidence, counsel for the Secretary of Banking (the accountant) contends that there should be no setoff allowed to the indorsers, so long as there is any likelihood of collecting the money from the maker of the note, and counsel for the accountant, therefore, objects to the allowance of the setoff. In other words, counsel for the accountant contends that, until the insolvency of the maker of the note is shown, the indorser cannot set off the deposit in the instant case against their liability as indorsers on the note of Crane Hook Oil Storage Company.

Counsel for the claimant, in their brief, cite the case of Arnold v. Niess, 1 Walker 115, 36 L. I. 437, which, according to their contention, seems to be the only direct authority in Pennsylvania as to the right of an indorser to set off his liability against a deposit in a closed bank. However, this decision goes no further than to state the broad principles here mentioned. As counsel for the claimant well say: "Cases in which the exact question involved here arises are somewhat rare, and the ones which we have been able to find make it clear that the equities of the individual case are to be taken into consideration in determining any offset." Further on in their brief, counsel for the claimant cite the case of Curtis, Receiver, v. Davidson, 215 N. Y. 395, 109 N. E. 481. In that case, the facts were that the plaintiff, as receiver of an insolvent national bank, sued the defendant as indorser upon 19 separate promissory notes by various makers. The answer set up by way of defense and counterclaim was that, at the time of the suspension of the bank, the defendant had on deposit $647.66, and offered to pay the amount of the notes sued upon less this sum. The immediate matter before the Court of Appeals was an appeal by the plaintiff from an order denying the plaintiff's motion for judgment on the pleadings. The decision of the Court of Appeals of New York, by Seabury, J., was in favor of allowing the counterclaim. This case of Curtis v. Davidson has been considered by the Court of Appeals of New York in the case of The Bank of United States v. Braveman, 259 N. Y. 65, 181 N. E. 50, and there the court, by Hubbs, J., has said (p. 70) : "While principles of justice and equity require that a setoff be allowed where the litigation is between the parties, another equitable principle comes into operation when the litigation is between a depositor and the receiver of an insolvent party. In such a situation, the rights of general creditors have intervened and equity requires that the assets of the insolvent party be equally distributed among such general creditors. (Gerseta Corp. v. Equitable Trust Co., 241 N. Y.418.) To allow an indorser to set off his deposit when the maker is solvent and able to indemnify the indorser as in this case would enable the indorser to collect the full amount unpaid on the note from the maker and at the same time receive a larger amount of his deposit than other depositors. Such a result would be inequitable. (Lippitt v. Thames Loan & Trust Co., [88 Conn. 185] supra.)" This is the controlling decision on this question, in the opinion of the instant court.

### Conclusions of law

Lancaster Trust Company is insolvent. The rights of its general creditors have intervened, and equity requires that the assets of the insolvent party be equally distributed among its general creditors. To allow the indorsers of the note referred to in this opinion to set off their deposit, when the maker of the note is solvent and able to indemnify the indorsers, would enable the indorsers to collect the full amount unpaid on the note from the maker, and, at the same time

receive a larger amount of their deposit than other depositors. Hence, the exception filed in the instant case must be dismissed and the setoff disallowed.

Exception dismissed; claim of setoff disallowed.

From George Ross Eshleman, Lancaster, Pa.